*Paddock & Johnson*, for plaintiff in error.

*Schunck & Thompson*, for defendant in error.

---

## LESSEE'S EQUITY IN BUILDING ERECTED BY HIM.

[Circuit Court of Lucas County.]

REUBEN J. LENT v. CHARLES F. CURTIS.

Decided, February 3, 1902.

*Res Judicata—Equity Suit to Enjoin Forcible Entry and Detainer Proceedings—Not a Bar to Action by Lessee to Recover for Building Erected by Him—Landlord and Tenant—Word "Term" as Used in Lease—Refers to the Time the Lease Will Expire in the Absence of Default—Forfeiture Does Not Affect Lessors Right to Damages or Lessees Equities in Improvements—Insolvency of Lessor Not a Bar to a Suit by Him for an Accounting.*

1. The dismissal generally and without a saving clause of a suit by a lessee to enjoin a proceeding in forcible entry and detainer by the lessor, based on defaults creating a forfeiture, is not *res judicata* as to the equity of the lessee in a building erected by him on the leased land, under a provision that at the expiration of the term the lessor would purchase such building at 70 per cent. of its appraised value.

2. The word "term" as used in such a lease refers to the time provided by the lease for the lessee's term to expire if there is no default, and the lessee is without a right of action until that time upon such a covenant of purchase.

3. While a forfeiture of the lease is absolute, it in no way affects the lessor's right to damages on account of the default, or the lessees right to recover his equity in the improvements, and an accounting may be ordered.

4. A tender by the lessee of rent covering the entire term is not a prerequisite to a demand for an accounting, and his insolvency is not a fact which the lessor can avail himself of as a defense against the hardship of being compelled to enter upon litigation and submit to an accounting when the result will be to show a balance in his favor.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This case is here on appeal. It was brought in the court of common pleas of this county in the year 1891. It has been dragging along for something over ten years for some reason not explained, but it has but recently come into this court.

It is an action upon the part of Mr. Lent, who was at one time a tenant of Mr. Curtis and one Peter H. Birkhead, to recover the value of a certain building which he erected upon premises that were leased to him by them; and conceding that they would have certain claims against him to offset in a measure his claim for the value of the building, he asks for an accounting and a judgment for the remainder.

It appears that Mr. Lent became the tenant of Curtis and Birkhead of a vacant lot on Summit street, in this city, under a lease dated March 25, 1875. By the terms of the lease it was let from July 1, 1875, to July 1, 1890. Mr. Lent was to pay a rental of $1,000 per year, payable in quarterly installments; but the lease contains a provision that at the expiration of five years there shall be an appraisement of the premises exclusive of the building which Mr. Lent agreed to put upon the lot, and that thereafter he shall pay for the succeeding five years at a rate equal to six per cent. upon the appraised value of the premises; provided, however, that the rent shall not fall below $1,000 a year. And there is a similar provision as to the next succeeding period of five years, beginning with 1885. The lease contains a provision as to the erection of a building upon the premises, and as to the compensation therefor at the expiration of the term, which I shall read:

"Said party of the second part agrees to improve said prem-
ises by erecting a building thereon at a cost of not less than
$6,000, said building to be completed by the first day of Sep-
tember, 1875, or within a reasonable time thereafter, the founda-
tion of which said building shall be lowered in the ground to a
depth equal to that of the foundation of the adjoining building.
It is further agreed by and between the parties, and the said
parties of the first part (being the lessors) do hereby obligate
themselves to purchase of the second part, his executors or ad-
ministrators, at the expiration of said term, all the buildings
which may have been made, erected and placed upon said prem-
ises by the party of the second part, and which shall at that
date be suitable for business purposes, at a price equal to seventy
per cent. of the actual appraised value of the same; said ap-
praised value to be determined by three disinterested persons,
to be selected in the manner aforesaid, the decision of any two
of whom shall be considered final."

"To be selected in the manner aforesaid" refers to the method
provided for the selection of appraisers to fix the rental value
of the premises.   These appraisers are to be selected in the same
way, one by the lessee, one by the lessors, and the third by the
two thus chosen.   Another part of the lease to which we shall
have occasion to refer is that providing for the termination or
forfeiture of the lease in the event that the lessee does not com-
ply with certain conditions.   That provides in part as follows:

"And it is further understood and agreed to, that if the said
party of the second part shall fail to pay the rent aforesaid as
the same shall become due and payable, according to the cove-
nants aforesaid, and shall fail to perform any of the covenants
and conditions on his part to be kept and performed, it shall
and may be lawful for said party of the first part to re-enter
and take possession of said demised premises, and expel said
party of the second part, his heirs, executors or assigns, there-
from.   And it shall not be necessary for the said party of the
first part, or any other person in their behalf, to make demand
for the payment of said rent at the time it shall become due
and payable, or at any other time to entitle them to re-enter,
any rule in law or equity to the contrary notwithstanding."

The lease contains another provision to which I desire to make
reference, to the effect that the lessor shall have a lien upon
the building for the non-payment of rentals, taxes, assessments,
etc., that reads as follows:

"It is also agreed that the party of the second part, in addition to the rents aforesaid, shall pay all taxes and assessments which may be levied or assessed upon said premises, on or after the first day of January, 1875, except payment of installment of said taxes for December, 1875, as the same may from time to time become due and payable, and that said taxes and assessments, together with the rents aforesaid to become due, shall at all times constitute a good and valid lien in favor of the parties of .the first part upon the said improvements to be erected hereafter by the party of the second part upon the premises aforesaid; it being understood that the moneys to be paid for the sidewalk now laid are to be paid by the parties of the first part."

Immediately following this is the clause which I have read, providing for the erection of the building, and for the payment of seventy per cent. of its value in a certain contingency.

In the case at bar a petition, answer and reply have been filed, making up certain issues; and the question now submitted to us, after hearing certain evidence, is whether we should require this accounting. Our finding upon this occasion will not be the basis of a final judgment or a final order; but by agreement of the parties we are called upon to determine this preliminary question, in accordance· with the principles of a court of chancery, in order that the parties may know how further to proceed.

It appears from these averments and from the evidence adduced that Mr. Lent went into possession of the premises under the lease, and erected a building upon them, being a substantial structure, designed for a theater, or for performances of some description, and that in this enterprise he became financially embarrassed, and was unable to pay all of the bills that he made in putting up the building. It appears that he started in to erect a building to cost $6,000 or $7,000, and that it cost him perhaps more than twice that, and he was not able to pay the contractors and material men. The result was that an action was instituted to foreclose mechanic's liens. The lessees were made parties to that action, and by way of answer and cross-petition they set up their claim for the accrued rents, and their lien as a first lien upon this building, as provided in the lease,

and the property was brought to sale under a decree of fore-closure. The property was bid in by Mr. Maples, as a trustee for all of the lienholders excepting the lessors. The claim of the lessors that had then accrued for taxes and assessments, etc., was paid from the proceeds arising from this sale, and $2,500 of rent then delinquent was paid from the proceeds. The necessary funds to pay the costs and to pay the claims of the lessors, appear to have been raised by these other lienors, perhaps in the proportion of their respective claims; and then and thereafter Mr. Maples held the title to the property thus obtained upon foreclosure, which was, I should say, the lease-hold interest, and whatever interest in the building under the foreclosure was held by Mr. Maples as trustee for these various lienors in the proportions of their respective claims on account of labor and materials and on account of the funds advanced to discharge these costs and the claims of the lessors. Subse-quently a Mr. Norton succeeded to the title and position of Mr. Maples as trustee. Still later it appears that the plaintiff here, Mr. Lent, undertook to redeem, or reinstate himself, by satis-fying the claims of these lienors (or some of them, it does not appear that he acquired the interest of all) by taking from them assignments of their respective claims.

After this foreclosure sale—whether before or after the as-signments, that I have mentioned, to Mr. Lent, is not clear, and is perhaps immaterial—an action of forcible entry and detainer was instituted by the lessors against the trustee, then Mr. Jesse S. Norton, to obtain possession of the premises, in consequence of default upon his part in payment of rent that had accrued after this $2,500 had been paid—rent that had accrued after the foreclosure sale—and also on account of a violation of the liquor laws of the state, which, under the provisions of the statute and of the lease would create a forfeiture. That proceeding having been instituted before a justice of the peace, Mr. Norton, as trustee, began a suit in equity in the court of common pleas of this county to enjoin the lessors from prosecuting the same. In his petition he set forth the lease, and that the building had cost a large amount of money, and conceded the default in the payment of rent, but he appeared to have the notion that the

lessors should not proceed with their forcible detainer action until they had satisfied the claim which he asserted of seventy per cent. of the value of the building, before they should take possession of the premises, and asked in effect that the lessors might be enjoined from proceeding with their forcible detainer suit until his claim in that respect might be adjusted and satisfied. An answer was filed by the lessors, in which they set forth the defaults. The issues were made up, and the case appears to have been submitted to the court upon the issues thus framed, and the petition of the plaintiff was dismissed generally upon the merits. Thereupon the lessors proceeded with their forcible detainer suit, with the result that it was found by the justice that the trustee, Norton, was in default in both of the respects claimed; that he had violated the liquor laws and the terms of the lease, by permitting the unlawful sale of liquor upon the premises, and he had made default in the payment of rent. Judgment was entered against the defendant, a writ was issued, and the defendant was dispossessed, and the lessors went into possession of the premises.

These various suits and proceedings were all instituted within a few years after this lease was executed—the foreclosure suit I think in 1876, the forcible entry and detainer proceeding and the suit in equity following upon that within a year or two after—and they were all determined by the year 1880, and the lessors went into possession in 1881, and they, by themselves and their tenants, to whom they subsequently let the premises, have remained in possession ever since.

In 1881 the trustee served notice upon the lessors that he had selected an appraiser as provided for in the lease, and desired to have them select one on their part, that these two might select a third, to proceed to appraise the premises, in order that the amount of seventy per cent. of the value might be determined. Nothing was done by the lessors in pursuance of that notice. Again in 1891 a like notice was served upon the lessors for like appraisement, with a like purpose, and this was ignored. Thereupon this suit was instituted.

The plaintiff says in his petition that this building cost in the neighborhood of $18,000; that the amount of taxes and assess-

ments and other claims against him on account of his defaults are much less than the seventy per cent. of the value of the building, which would be something over $12,600; that therefore, after taking into account all lawful claims of the lessors (the defendants) against him, there would be, perhaps, $10,000 due him which he ought to have, and which he seeks to recover on account of the value of the building.

The defendants aver and contend, first, that this whole matter is *res judicata;* that by reason of the facts having been set forth in the petition to enjoin them from proceeding with the forcible detainer suit, by reason of the court having given consideration to the evidence therein offered, and having dismissed the case without any saving clause, but generally, the whole matter has necessarily been determined adversely to the claims of the plaintiff. And the defendants further insist that when the trustee (into the rights of the beneficiaries of whom Mr. Lent has come), forfeited his rights under the lease by permitting the unlawful sale of liquor, and by the non-payment of rent, and in consequence was subjected to the judgment in forcible detainer, he thereby forfeited and lost as well any claim which he might have had for the improvements put upon the premises.

As to his first claim of *res judicata,* our understanding of the purpose of that action is, considering the averments and the prayer of the petition, that it was simply to enjoin the plaintiffs in the forcible detainer suit (the lessors), from proceeding therein, and to require them to go into a court of equity to have all claims adjudicated, before they should seek by forcible detainer to recover possession of the premises. And our understanding of the result of the judgment in that suit in equity is, that it determined simply and solely that the lessors had a right to and might proceed with their forcible detainer proceeding, notwithstanding any claims that the trustee might have by virtue of the provision as to the building and compensation therefor. We can not see that the court in that action was required to proceed further with the inquiry or that the court was authorized to go further with the judgment. It seems to us clear, even though the plaintiff in that equity suit might have a right to require an accounting, either then or at some time in

the future, for the value of the building, that that could not defeat or affect the right of the lessors to proceed by forcible detainer to recover possession of the premises; that the lessors, as a condition to obtaining possession of the premises, were not required to settle for the building, but that under and in pursuance of the terms of this lease, upon default in payment of the rental and on account of the violation of the liquor laws, the lessors at once had a right which they might at once enforce, to recover possession of the premises, and that this right was wholly independent of any right or claim which the trustee or Mr. Lent, as his successor in interest, might have under the provisions of the lease as to the building and as to compensation for the building.

And we are also of the opinion that the court might and should have disregarded the claim of the plaintiff for relief in that equity suit, or rather denied it on the ground that his right of action for the recovery of anything on account of the building had not accrued or matured. While it is true that the lease provides that the right to recover, or to have this seventy per cent. of the value of the building, shall accrue at the expiration of the term, and technically the term expired when default was made, and there was a forfeiture, yet we think the word "term" in this connection should be read in the light of all the provisions of the lease as "time," and that it refers to the time provided by the lease for the lessee's term to expire in the event that there was no default, which would be July 1, 1890; that the person in default, to-wit, the lessee, could not take advantage of his own default, and thereby cause the time for the payment of this seventy per cent. to arise earlier than that contemplated by the parties; that the right of the lessee whatever he had, under this provision, would not accrue until the expiration of the time limited, i. e., July 1, 1890; that the time not having arrived at the time this suit in equity was instituted, the court might very well have dismissed the petition upon that ground; and for that reason it must be assumed, we think, that the court did proceed upon that ground and for that reason.

I desire to refer to one or two cases upon the subject of *res judicata* that we consider in point here. One case is that of *Cramer* v. *Moore*, 36 Ohio St., 347. The syllabus reads:

"In an action on a promissory note, the maker is not estopped from setting up want of consideration or fraud, by a judgment dismissing his petition on the merits, in an action brought to enjoin the negotiation of the note and to obtain its surrender and cancellation, although the matter set up as a defense was relied on as the ground of relief in the petition."

What is there decided may not be entirely clear without reading somewhat more of the decision:

"The action in the court below was brought by Moore against Cramer, upon four negotiable notes given by Cramer to Allen and Hopkins March 13, 1868, and shortly after, and before due, endorsed to Moore. Cramer answered that the notes were obtained by fraud for a worthless patent right, and that Moore was aware of the fraud, and took the notes to aid in its consummation; that at the time he took them an injunction existed, allowed on a petition praying that the payees be restrained from negotiating them, and as a final relief, their delivery up and cancellation. To this Moore replied, denying all fraud, either of the payee or himself, and averring that he took the notes 'in the usual course of trade for a valuable consideration without any knowledge on his part of any infirmity in the notes.'

"He further insists that Cramer is conclusively estopped from setting up or proving any of the facts stated in his answer in relation to fraud in obtaining the notes, he having stated substantially the same facts in his action for the injunction, which, upon being prosecuted to final hearing in the district court, was dismissed upon the merits.

"On the trial the court ruled out the record of that suit, holding that it constituted no bar to the defense of Cramer.

"The trial resulted in a verdict and judgment for the defendant.

"On error, the district court reversed the judgment, on the ground that the judgment in the action prosecuted by Cramer for an injunction was a bar to his making the defense in the action on the notes.

"The object of the present petition is to obtain the reversal of the judgment of the district court."

Judge White, in the opinion, says, page 348:

"The original action was brought by Moore, the indorsee of the notes, against Cramer, the maker, to recover the amounts due thereon; and the question is, whether Cramer is estopped from proving that the notes were without consideration, and were obtained from him by the payees through fraud.

"On behalf of Moore, it is alleged that Cramer is thus estopped from making defense to the notes. The ground of the alleged estoppel is, that Cramer, after the delivery of the notes to the payees, brought suit against them to enjoin the negotiation of the notes, and to obtain a decree or judgment for their surrender and cancellation; that the grounds of such relief were the same, in substance, as he now sets up as a defense to the suit on the notes; and that, after the allowance of a provisional injunction, the case was finally heard upon the merits and dismissed."

The facts in this case from which I am quoting resemble in a general way those here; that is to say, so far as this property is involved, it is conceded here that the facts set forth in the petition in equity to enjoin the lessors from proceeding with the forcible detainer suit were the same practically as those set forth in the petition in the case at bar, as grounds for relief. It is urged that because the equity suit was dismissed generally upon the merits, therefore it is a bar to further proceedings here. To be sure these are both actions in equity; whereas, one of the actions mentioned by the court in this case was an action at law and another an action in equity; but we do not think from the discussion of the case, that that could make any difference, since the proceeding in equity was practically to interpose a defense to an action at law, to prevent its going forward.

Judge White proceeds:

"We do not question the principle insisted upon on behalf of the defendant in error, Moore, that a judgment of a court of competent jurisdiction, upon a question necessarily involved in a suit, is conclusive in a subsequent suit between the same parties, depending on the same question; and in respect to this quality of conclusive effect upon parties and privies, the decrees of courts of equity, upon matters within their jurisdiction, stand upon the same footing with judgments at law.

"But in determining the application of this principle to the present case, regard must be had to the nature of the equitable jurisdiction called into exercise in dismissing the petition seeking the surrender and cancellation of the notes in question.

"The foundation of equitable jurisdiction is the inadequacy of the common law to afford the necessary relief. Hence, there is a marked distinction between cases where equity interferes with the remedies afforded to parties by the course of the common law, and cases where equity refuses to interfere.

"If in the present instance, the court instead of refusing to interfere and dismissing the petition, had found the then plaintiff, Cramer, entitled to the equitable relief sought, and had decreed the surrender and cancellation of the notes, the legal right of the payees to sue on the notes would have been extinguished; or if, in violation of the injunction, the payees had put it out of their power to surrender the notes, the court could, doubtless, have followed them into the hands of any party taking them in known violation of the injunction. But such was not the finding and decree of the court. And the findings of fact in the case were only material as laying the foundation for the judgment or decree that was, in fact, rendered.    *    *    *

"The only effect, therefore, in our opinion, of the dismissal of the petition, was to declare that the plaintiff had no equitable right to maintain the action; and that the rights of the parties remained the same as if no action had been brought, or injunction allowed, save only that the dismissal was a bar to the bringing of another action for the same matter."

In *Porter* v. *Wagner*, 36 Ohio St., 471, I read the syllabus only:

"A judgment of dismissal of a petition for the specific performance of an agreement and of a counter-claim asking a rescission of the same, is no bar to an action for the recovery of money paid on the agreement, although the cause of action accrued before the rendition of the judgment.

"Where a judgment between the parties is relied upon as an estoppel, the question is not what the court might have decided in the former action, but what it did in fact decide, as shown by the judgment.

"A judgment is conclusive by way of estoppel only as to facts, without the proof of the admission of which it could not have been rendered."

I refer, without reading further than the syllabus, to the case of *Witte* v. *Lockwood*, 39 Ohio St., 141:

"The general rule is that a defendant is bound to set up every defense, legal or equitable or both, which he may have to the action, and waives those not pleaded; but where the facts claimed to afford a defense are sufficient to constitute a counter-claim, there is an exception to such general rule.

"A defendant relying solely on his legal title, in an action to recover the possession of real property, and failing, is not estopped to maintain an action to correct mistakes in the deeds

under which the parties to such action respectively claimed. He has his election to rely on such equitable title as a defense or a counter-claim, or he may maintain an action thereon.''

A word as to the other contention, that by the forfeiture of the term, the lessor and those claiming under him forfeit a right to the appraisement of seventy per cent. of the value of the building provided for in the lease. Counsel for defendant insists that these various covenants upon the part of the lessors and the lessee in this case are dependent; that the performance of one on the one part, or the performance of all upon the one part, constitutes a condition precedent to the enforcement of any of the covenants of the party of the other part. But we can not agree with this contention. The rules for determining whether covenants are independent or dependent are very numerous, and some of them appear to be very technical; but there are certain general rules and principles well stated in 2 Parsons on Contracts (6th Ed.), star paging 528:

''It is a similar question—sometimes indeed the very same question—whether covenants are mutual, in such sense that each is as a condition precedent to the other. And also whether covenants or agreements be dependent, or independent. By the very definition of them, if they are dependent, that is, if each depends on the other, the failure of one destroys and annuls the other. Or, if this dependence is not mutual, but one of them rests upon the other by a dependence which is not equally shared by the other, if that contract upon which this dependence rests is broken and defeated, the other by reason of its dependence is annulled and destroyed also. But they may be wholly independent, although relating to the same object, and made by the same parties, and included in the same instrument. In that case they are two separate contracts. Each party must then perform what he undertakes, without reference to the discharge of his obligation by the other party. And each party may have his action against the other for the non-performance of his agreement, whether he has performed his own or not. Now the law has no preference for one kind of contract over another; nor does it, by its own implication and intendment, make one rather than the other, and still less does it require one rather than the other. It may indeed be safely said that this question in each particular case will be determined by inferring, with as much certainty as the case permits, the mean-

ing and purpose of the parties, from a rational interpretation of the whole contract."

This is in a measure adopted and approved, and a decision made illustrative of the principle, in the case of *Gould* v. *Brown,* 6 Ohio St., 538. In the course of the opinion, by Brinkerhoff, J., he refers to a rule upon the subject laid down by Sergeant Williams in his note to *Portage* v. *Cole,* 1 Wms. Saund., 319:

"Where a covenant goes only to a part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and an action may be maintained for a breach of the covenant, on the part of the defendant, without averring performance, in the declaration."

It is contended here on the part of the defendant that it devolves upon the plaintiff to make a tender at first of all the rent that accrued during the fifteen years of the term; that all that had not been paid by him during this foreclosure sale, and the taxes and assessments, etc., he obligated himself to pay, and that this must be done as a condition precedent to enforcing this provision as to the payment for the building, and, as counsel says, as a condition precedent to the opening up of this forfeiture. We do not regard this action as in the nature of a suit to open up a forfeiture. We agree with the contention of counsel, that the forfeiture, on account of the violation of the liquor laws, is not subject to being set aside by a court of equity —that it is absolute; that by the forfeiture the term was ended; that the right of Lent and of the trustee succeeding him, to the term, and to occupy as lessee, was absolutely at an end after the judgment in the forcible detainer suit and the taking possession by the lessors; and that there could be no relief against that forfeiture. We are of the opinion that it follows, too, that the right of the lessors to recover rent for the remainder of the term ended as well. But it does not follow that the right of the lessors for compensation as damages in consequence of this default was at an end; and we are of the opinion that in the adjustments of the rights of the parties, they may require the plaintiff to account to them and compensate them for any damage resulting therefrom. We will not undertake at this time

to lay down any rule of damages; that will remain for further consideration; but it may be said generally that it would be the loss resulting from the failure of the lessee to comply with the terms of the lease, to remain in possession and pay the rent. It may be readily seen that if the lessors were not able to rent the premises for the remainder of the period of fifteen years at as great advantage as was provided by the terms of the lease, there would be a difference on account of which they would have a claim for damages.

But forfeitures are not favored in law nor by courts of equity. The terms or provisions of the forfeiture will not be extended, nor will they be implied. The forfeiture will not be enforced beyond its strict terms. Now, the parties in drawing this instrument expressly stipulated for the result that should follow from a default, and they did not herein provide that one of the results should be the loss of the building or the loss of seventy per cent. interest in the building. The provision I have already read, that in case of default in the payment of rent, or in permitting the unlawful sale of liquor, or in the payment of taxes and assessments, etc., or of failure "to perform any of the covenants and conditions on his part to be performed, it shall and may be lawful for said party of the first part to re-enter and take possession of said demised premises, and expel said party of the second part, his heirs, executors or assigns, therefrom." The defendant here had a right to terminate the lease, he had a right to put an end to the term; but the provision as to the compensation for the building, according to our construction of this instrument, stands as an independent matter. There is no provision that the right to recover this seventy per cent. should be lost by any default upon the part of the lessee. We do not look upon it as being like a case where a lessee for his own convenience erects buildings, or improves, or puts in fixtures that he may not be permitted to take away or remove after the expiration of the term, there being no express provision in the lease upon the subject. But here we have a provision which discloses that the removal of the building to be erected by the lessee was not contemplated; he had no right to remove the building in any event, even though he had performed and completed

every covenant upon his part to be kept and performed. The building was to remain, and it was to be purchased at the expiration of the time, as we read the lease, by the lessors. He obligates himself to purchase it, and to pay just seventy per cent. of its value, to be ascertained in the mode pointed out. The lessor had a right to take possession of the premises, as I have said. He regained possession by the action of forcible detainer. Having regained possession, he had a right to the use and occupation of the building, and the lessee had no right to interfere with him in the exercise of that right or in that possession. The lessee, by reason of his default, was bound to remain out of possession, and to wait quietly until the expiration of the period of fifteen years. He had no remedy until that period had expired, then we think his remedy was that which he seeks to pursue here, to ask that the appraisement should be made, and if the seventy per cent. of the value of the building at that time was more than the damages accruing to the lessor in consequence of his default, the lessee would be entitled to the difference; if it was less, he would be entitled to nothing; he would be required to pay to the lessor the damages in excess of the value of the building.

It seems to us that the parties would hardly have entered into a contract of this kind with any other result in contemplation. We do not think the result should be that insisted upon by counsel for the defendant here, that the lessee, after putting up a building worth $18,000 upon this vacant lot, adding that much to its value, if he made default in the payment of a single installment of perhaps $50 of rent or less, by virtue of the forfeiture resulting from that slight default, should lose his building worth $18,000. We would not feel warranted in taking that view of the contract, unless by its express terms we were required to do so. We think that was not in contemplation, and is not the meaning of the contract, and our conclusion is, that the accounting prayed for should be made.

It is said that the plaintiff is insolvent, while the defendant is solvent, and it is insisted upon behalf of the defendant that the balance, if there is to be a balance struck, would be in defendant's favor, and that it is a great hardship to require him to

enter upon this litigation and to submit to this accounting, when the result will be to show a balance in his favor. We know of no rule under which we can deny the plaintiff the relief he seeks simply because he is insolvent and any judgment in favor of the defendant would be worthless. We have thought about the matter of requiring security for costs, but we know of no authority permitting us to do that. If a referee should refuse to serve because of plaintiff's financial condition, we know of no reason why the plaintiff may not make known his inability, and insist on the court sitting here and listening to all the testimony.

I omitted to state that this is the opinion of a majority of the court; the court is not unanimous.

Mr. Thurstin: "I would suggest that there would be difficulty in working out this judgment which the court has rendered, and perhaps the court can aid us in respect to that. Long before the term had expired—that is, the term of fifteen years—the owner of this property had found it necessary, in order to make it available at all, to reconstruct the building, and it was reconstructed for the purpose of getting a tenant. While the court has said that the value of the building for business purposes at the end of fifteen years at seventy per cent. was to be taken, of course it would be grossly unfair to leave out the improvements which he was compelled to make upon it in order to make it available at all."

Parker, J.: "We have considered that the value of the building, as originally constructed by the plaintiff, subject to reasonable wear and tear, is to be the basis. The plaintiff would not be entitled to any improvements put upon it subsequently by the lessors to make it available for their purposes."

HAYNES, P. J.:

I simply occupy this position in this case at present: I neither assent nor dissent; but inasmuch as a majority of the court are of the opinion that the case should go forward, I thought they should deliver the opinion, and as the case progresses I will look into it further. I am inclined to the view at

the present time that the plaintiff has no equity, but I do not want to conclude myself one way or the other upon that question at the present time.

Hamilton & Kirby and J. S. Wirtman, for plaintiff.

W. S. Thurstin, for defendant.