CRAIG WRECKING COMPANY; CRAIG, APPELLANT, *v.* S. G. LOEWENDICK & SONS, INC., APPELLEE.

---

[3] Appellants concede the documents comply with Evid. R. 902(3) in all other respects.

(No. 86AP-679—Decided
April 7, 1987.)

*Wasserstrom, Kirkwood & Soltis*
and *Hugh E. Kirkwood, Jr.,* for appellant.

*Hamilton, Kramer, Myers & Cheek*
and *Austin P. Wildman,* for appellee.

STRAUSBAUGH, P.J. Defendant, at the close of trial, moved the common pleas court to direct a verdict in its favor regarding plaintiffs' suit in trespass. The court granted defendant's motion on the issues of liability and damage to the realty. Plaintiff John E. Craig appeals.[1]

On March 23, 1973, plaintiffs entered into a lease agreement with the heirs of Miller H. Pringle for certain property to be used as a landfill. The term of the lease was five years and terminated on March 31, 1978. An option to renew for an additional five years was included in the lease.

During the lease period, plaintiffs frequently failed to make the lease rent payments and during the term of the original lease never satisfied the full amount. At the expiration of the original term, no written option to renew for the additional five years was exercised. Plaintiffs, however, remained in possession.

On March 7, 1983, plaintiffs were advised that the Pringle heirs had engaged defendant as the new landfill manager and defendant was to take charge of the landfill operation. No notice to vacate was received by plaintiffs. On March 11, 1983, defendant entered the property with three pieces of equipment and dumped certain items contained on the property into a lake which abutted the landfill. The contour of the dump was altered as a result of defendant's acts. Plaintiffs remained in possession despite defendant's entry and subsequently purchased the property in October 1983.

On March 8, 1985, plaintiffs filed a complaint alleging trespass to both real and personal property; plaintiffs also sought damages against defendant. The trial court overruled motions for summary judgment and the case was tried to a jury. Following the directed verdict in defendant's favor on the real property claims, the jury determined that plaintiffs had not suffered any damage to their personalty as a result of defendant's entry.

Plaintiffs on appeal raise two assignments of error:

---

[1] Although only plaintiff Craig has brought this appeal, we will refer to the plaintiff in the plural for purposes of consistency throughout the decision.

"1. The trial court created reversible error in sustaining defendant's motion for directed verdict.

"2. The verdict of the jury is against the manifest weight of the evidence."

In their first assignment of error, plaintiffs assert that the trial court erred in holding that defendant had not trespassed. The court found that plaintiffs were holdover tenants and, as such, were governed by the terms of the original lease. Since that lease allowed the Pringle heirs to peacefully repossess the land, then defendant, as the agent of the lessors, was authorized to enter onto the property.

Plaintiffs maintain, however, that they were not holdover tenants, but were instead either agents of the lessor or mere trespassers. Accordingly, the terms of the lease do not govern this action. This argument must fail for the following reasons.

Clearly, plaintiffs were not the agents of the Pringle heirs, at least insofar as an agency relationship could exist as to defendant. In order for such relationship to arise, the heirs must have held plaintiffs out to defendant as having authority to act and defendant must have believed that plaintiffs had such authority. *Ammerman* v. *Avis Rent A Car System* (1982), 7 Ohio App. 3d 338, 7 OBR 436, 455 N.E. 2d 1041; *Logsdon* v. *ABCO Constr. Co.* (1956), 103 Ohio App. 233, 74 Ohio Law Abs. 467, 3 O.O. 2d 289, 141 N.E. 2d 216. Here, defendant was well aware that plaintiffs had no authority to act as the lessors' agent. If anything, it was defendant which was acting as the Pringle heirs' agent.

Plaintiffs maintain that if they were not agents of the lessors, then they were trespassers. Were we to accept this contention, then the instant suit could not be maintained in the first instance. Implicit in an action in trespass is the notion that plaintiffs were either actually or constructively in possession. *Beggs* v. *Thompson* (1825), 2 Ohio 95; *Rowland* v. *Rowland* (1837), 8 Ohio 40. If plaintiffs were trespassers, it follows that they were not in possession. Otherwise, a trespasser could maintain an action in trespass against the one already in possession. The law cannot allow so absurd a result.

Plaintiffs next argue that even if they were not trespassers or the lessors' agents, the court below was nevertheless incorrect in finding that they were holdover tenants. In their view, a tenant who remains in possession of the demised premises is not a holdover tenant if the landlord did not expressly consent to the holdover tenancy.

In Ohio, a tenant who holds over after the term of his lease expires is a tenant at sufferance. *Anderson* v. *Brewster* (1886), 44 Ohio St. 576, 580, 9 N.E. 683, 685. As such, the landlord may elect to treat the tenant as a trespasser, or hold him to a new lease term. *Gladwell* v. *Holcomb* (1899), 60 Ohio St. 427, 54 N.E. 473, paragraph two of the syllabus. When a tenant holds over beyond the lease term and pays rent according to the former terms, the law implies a contract on the tenant's part to hold over for an additional term under the same conditions which governed the prior term. *Bumiller* v. *Walker* (1917), 95 Ohio St. 344, 348-349, 116 N.E. 797, 799. Although such presumption is rebuttable, the new term may arise from the conduct of the parties regardless of the intentions of the tenant alone. *Id.* at 348-354, 116 N.E. at 799-801. The election to hold the tenant to a new term lies with the landlord and his acceptance of rent implies an election to treat the tenant as a holdover. *Baltimore & Ohio RR. Co.* v. *West* (1897), 57 Ohio St. 161, 165-166, 49 N.E. 344, 345. Absent any agreement to the contrary, the new lease term is governed by the provisions of the original lease.

*Bumiller, supra,* at 348-349, 116 N.E. at 799.

Given the facts on the record before us, it is quite apparent that the court below was correct in finding that plaintiffs were holdover tenants. The Pringle heirs continued to accept rent from plaintiffs, albeit in untimely installments. The heirs never gave plaintiffs notice to vacate or quit the premises until the second five-year term had nearly expired. From these facts we believe the court properly concluded plaintiffs were tenants at sufferance.

Accordingly, the terms of plaintiffs' original lease with the Pringle heirs provided that the heirs could reenter and possess the premises in the event plaintiffs failed to make monthly rental payments. As such, the very terms of the lease vested in the lessors the right to peacefully reenter. Defendant, as the agent of the heirs, was therefore privileged to enter and take possession under the terms of the lease.

Plaintiffs argue, however, that whether the terms of the lease governed their tenancy or not, the court erred when it held that R.C. Chapter 1923 did not supersede those provisions.

R.C. 1923.01 (see 138 Ohio Laws, Part II, 2754, 2757-2758) provided in part:

"(B)  As used in this chapter:

"(1)  'Tenant' means a person entitled under a rental agreement to the use or occupancy of premises to the exclusion of others.

"(2)  'Landlord' means the owner, lessor, or sublessor of premises, his agent, or any person authorized by him to manage the premises or to receive rent from a tenant under a rental agreement, except, if required by the facts of the action to which the term is applied, 'landlord' means a park operator.

"* * *

"(4)  'Residential premises' has the same meaning as in section 5321.01 of the Revised Code, except, if required by the facts of the action to which the term is applied, 'residential premises' has the same meaning as in section 3733.01 of the Revised Code.

"(5)  'Rental agreement' means any agreement or lease, written or oral, that establishes or modifies the terms, conditions, rules, or any other provisions concerning the use or occupancy of premises by one of the parties, except that 'rental agreement' as used in division (A)(11) of section 1923.02 of the Revised Code and where the context requires as used in this chapter means a rental agreement as defined in division (D) of section 5322.01 of the Revised Code."

R.C. 1923.02 (see 138 Ohio Laws, *supra,* at 2758-2759) provided in part:

"(A)  Proceedings under Chapter 1923. of the Revised Code, may be had:

"(1)  Against tenants holding over their terms;

"(2)  Against tenants in possession under an oral tenancy, who are in default in the payment of rent as provided in this section;

"* * *

"(5)  When the defendant is an occupier of lands or tenements, without color of title, and to which the complainant has the right of possession;

"(6)  In any other case of their unlawful detention;

"* * *

"(8)  Against tenants of residential premises who have breached an obligation imposed by section 5321.05 of the Revised Code which materially affects health and safety. Prior to the commencement of an action under this division, notice shall be given to the tenant and compliance secured with section 5321.11 of the Revised Code.

"(9)  Against tenants of premises who have breached an obligation imposed upon them by a written rental agreement;

"\* \* \*

"(B) If a tenant holding under an oral tenancy is in default in the payment of rent, he shall forfeit his right of occupancy, and the landlord may, at his option, terminate the tenancy by notifying the tenant, as provided in section 1923.04 of the Revised Code, to leave the premises, for the restitution of which an action may then be brought under Chapter 1923. of the Revised Code."

Clearly, contrary to the finding of the court below, the provisions of R.C. Chapter 1923 do apply to commercial premises. Were it otherwise, the reference to residential tenants in R.C. 1923.02(A)(8) and to occupiers of lands under R.C. 1923.02(A)(5) would have little meaning. Moreover, the case law in Ohio supports this view. *Asbury United Methodist Church* v. *Bowers* (1980), 68 Ohio App. 2d 193, 22 O.O. 3d 287, 428 N.E. 2d 152; *Smith* v. *Etling* (1954), 96 Ohio App. 417, 54 O.O. 406, 122 N.E. 2d 18.

Although the Pringle heirs could have maintained an action against plaintiffs pursuant to R.C. Chapter 1923, the question we must now reach is whether they were required to use that code section or whether they were permitted to invoke the term of the lease authorizing self-help repossession. There is some early case law in this state which holds that peaceful dispossession without legal process is available to a landlord as a remedy for tenants' breaches of the lease agreement. *Smith* v. *Hawkes* (C.P. 1862), 2 Ohio Dec. Rep. 733. That decision, however, was rejected by the Shaker Heights Municipal Court in *Edwards* v. *C. N. Investment Co.* (1971), 27 Ohio Misc. 57, 56 O.O. 2d 261, 272 N.E. 2d 652. See, also, *State, ex rel. Marsol Apt. Co.,* v. *Vannuci* (1980), 68 Ohio App. 2d 181, 22 O.O. 3d 279, 428 N.E. 2d 468. The *Edwards* court indicated that the modern doctrine of dispossession requires landlords to follow the provisions of R.C. Chapter 1923. It should be noted, however, that *Edwards* involved a residential lease and was decided prior to the 1974 enactment of R.C. Chapter 5321, the Ohio Landlords and Tenants Act.

More recently, the Court of Appeals for Cuyahoga County held that R.C. Chapter 1923 is not the exclusive remedy available to commercial lessors who seek to repossess their property upon default of the tenant. *Cleveland Table Tennis Club* v. *Graham* (Nov. 6, 1986), Cuyahoga App. No. 52143, unreported; *Northfield Park Associates* v. *Northeast Ohio Harness* (1987), 36 Ohio App. 3d 14, 521 N.E. 2d 466. In these cases, the Eighth District Court of Appeals held that self-help repossession is still available in Ohio for commercial lessors despite the enactment of R.C. Chapter 1923. In reaching this conclusion, the *Northfield* court found that since the General Assembly had enacted R.C. 5321.15(A) as a bar to self-help repossession only in the area of residential leases, such legislation must weigh against a finding that self-help is not available in commercial settings. *Id.* at 21, 521 N.E. 2d at 474. Absent a breach of the peace and pursuant to a valid lease provision, a commercial lessor may resort to self-help repossession as a remedy for a lessee's breach of the lease agreement.

Having held that plaintiffs were holdover tenants and that defendant did not trespass, it is necessary to now consider plaintiffs' assertion that the court erred in directing a verdict on plaintiffs' claim for damages arising out of defendant's conduct in changing the contour of the land. Where a lessor asserts its right of reentry, pursuant to a lease provision, upon lessee's breach of the agreement, the lessee is thereafter not entitled to possession. See, e.g., *Lent* v. *Curtis* (1902), 2 Ohio C.C. (N.S.) 558, 570, 14 Ohio C.D. 592, 602-603. As such, plaintiffs had no

84

rights in the land and cannot now complain of injury to the land as causing damage to their business.

From the foregoing we conclude that the court below correctly found that plaintiffs were holdover tenants and that it properly directed the verdict on the issues of defendant's liability for trespass and damages to the contour of the premises. Accordingly, plaintiffs' first assignment of error is not well-taken and is overruled.

Plaintiffs' second assignment of error challenges the jury verdict, finding that there were no damages to plaintiffs' personalty, as being against the manifest weight of the evidence. The damages issue went to the jury since, although a commercial lessor is entitled to peacefully repossess the demised premises, liability may arise for injury to plaintiffs' personal property. See *Ratnour* v. *Fissell* (App. 1927), 5 Ohio Law Abs. 795. Cf. *Ringler* v. *Sias* (1980), 68 Ohio App. 2d 230, 22 O.O. 3d 353, 428 N.E. 2d 869.

A jury verdict will be reversed as against the manifest weight of the evidence only where there is no competent, credible evidence in support of the verdict. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. Pursuant to this principle, we have held that a jury determination of damages will not be set aside unless the amount is so manifestly against the weight of the evidence as to indicate that the jurors misconceived their duties. *Carter* v. *Simpson* (1984), 16 Ohio App. 3d 420, 16 OBR 490, 476 N.E. 2d 705.

We cannot say, on the record before us, that the jury's verdict was so manifestly against the weight of the evidence as to require reversal. There was clearly competent and credible testimony to the effect that plaintiffs' personalty was worthless. Moreover, since the issue of damages was the only issue before the jury, it would be difficult to find that they did not clearly comprehend their duty in this regard.

Plaintiffs' second assignment of error is not well-taken and is, therefore, overruled. Having overruled plaintiffs' assignment of error, we therefore affirm the judgment of the court below.

*Judgment affirmed.*

WHITESIDE and YOUNG, JJ., concur.