OPINION
Plaintiffs-appellants, James W. Inzetta and the Estate of H.J. Israel, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, The Ohio Bell Telephone Company dba Ameritech Ohio ("Ohio Bell"). Plaintiffs set forth a single error:
 THE TRIAL COURT ERRED WHEN IT HELD THAT, IN ORDER FOR A HOLDOVER TENANT TO BE BOUND FOR A LIKE TERM, THE TENANT MUST HAVE INTENDED TO HOLD OVER. (Emphasis sic.)
Because the trial court properly granted summary judgment to Ohio Bell, we affirm.
In May 1973, Bobbett, Inc., an Ohio corporation, leased a parking lot on the corner of Long Street and Normandy Avenue (the "property") to Ohio Bell. In 1974, plaintiffs purchased the property from Bobbett, Inc., and they assumed the lease agreement between Bobbett, Inc. and Ohio Bell. Through a series of addendum agreements and renewal options, plaintiffs and Ohio Bell extended the lease through the stated expiration date of the last written lease, February 28, 1998. In accordance with those agreements, plaintiffs received lease payments from Ohio Bell until February 28, 1998.
Contending Ohio Bell continued to occupy the leased premises beyond the expiration of the lease, plaintiffs, by letter dated January 25, 1999, demanded lease payments. When Ohio Bell failed to respond with the requested payments, plaintiffs on July 23, 1999, filed a complaint against Ohio Bell, asserting Ohio Bell breached the lease agreement by holding over and failing to make the required payments.
Ohio Bell ultimately filed a summary judgment motion; plaintiffs filed a cross-motion for summary judgment. The sole issue raised by the motions was whether Ohio Bell was a holdover tenant. In an effort to demonstrate Ohio Bell's ongoing occupancy, and thus its status as a holdover tenant, plaintiffs pointed to a fence Ohio Bell erected on the property, various shrubs and curb bumpers Ohio Bell placed on the edge of the property, and a gate that together prevented plaintiffs' access to the property. Plaintiffs further observed Ohio Bell continued to pay the property taxes as required under the lease terms.
Ohio Bell responded by noting that "[c]onsistent with Ohio Bell's intent not to renew that lease, Ohio Bell erected a fence to separate and protect the Inzetta property, closing off that property from Ohio Bell's use. It was not until January 25, 1999, many months after Ohio Bell erected the fence, that Mr. Inzetta wrote * * * to advise that the fence was situated 7 feet within his property line." (Affidavit of Timothy R. Cahill, paragraphs 5 and 6.) When plaintiffs alerted Ohio Bell to the fact that the gate and fence were on plaintiffs' property, Ohio Bell offered to remove the gate and fence at its own expense, but plaintiffs never responded to the offer. (Affidavit of Keith Eaton, paragraph 5.) Ohio Bell also offered evidence that it installed shrubbery and curb bumpers on the property because it believed the items were required under the Columbus City Code, and it left the items on the property after the expiration of the written lease for the same reason. It further noted that if it had continued paying real estate taxes on the property, its doing so was a mistake, as Ohio Bell completely discontinued use of the property as of February 28, 1998, even though it had actively used the property as a parking lot before that time: after February 28, 1998, Ohio Bell did not store any equipment on the property, did not park any vehicles on the property, and believed that it had fully vacated the property. Finally, Ohio Bell observed that after it stopped paying rent in February 1998, plaintiffs did not demand rent for almost eleven months.
In granting Ohio Bell's motion for summary judgment and denying plaintiffs' motion for summary judgment, the trial court determined the parties did not agree to a holdover; the court based its conclusion on a lack of mutuality. Plaintiffs timely appeal, asserting the trial court erred in concluding that to be bound for a holdover term, the tenant must have intended to hold over.
Preliminarily, in accordance with Civ.R. 56, a court must construe the evidence most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986], 477 U.S. 317, approved and followed).
A holdover generally is "based upon an implied agreement, and indicates on the part of the tenant that he intends to continue the relationship." Palevsky v. Bentfield (1933), 46 Ohio App. 385, 387. In general terms, a holdover occurs when a tenant maintains possession or occupancy of the premises past the expiration date of the lease agreement. See Bumiller v. Walker (1917), 95 Ohio St. 344; Steiner v. Minkowski (1991),72 Ohio App.3d 754, 762.
Contrary to the implication of plaintiffs' assigned error, the trial court did not determine a holdover would arise only if Ohio Bell intended to holdover. Rather, the trial court examined Ohio Bell's actions to determine whether they reflected an intention to holdover, regardless of what Ohio Bell's actual intent may have been. To that end, the trial court examined plaintiffs' contentions that Ohio Bell in effect blocked plaintiffs' access to the property by virtue of Ohio Bell's erecting a fence on the property and by placing curb bumpers and shrubbery along the property's edge.
In that respect, the undisputed evidence indicated Ohio Bell ceased using the property for a parking lot, ceased storing any equipment on the property, and believed it had fully vacated the property after February 28, 1998. Although plaintiffs contended the fence on the property constituted a continued use, the undisputed evidence showed that Ohio Bell erected the fence, apparently at a time near the expiration of the written lease agreements, to separate its property from that of plaintiffs and to close off plaintiffs' property from Ohio Bell's use. Further, Ohio Bell, again without dispute, indicated it was unaware the fence was on plaintiffs' property until so notified by plaintiffs' January 25, 1999 letter. As to the curb bumpers and shrubbery, Ohio Bell explained they were placed to comply with Columbus city ordinances; they were left for the same reason. None of the foregoing suggests a holdover.
We further recognize that, as plaintiffs noted, possession and occupancy have been determined by numerous factors, including a tenant's failure to surrender the keys. See Peters v. Durroh (1971),28 Ohio App.2d 245; Griffin v. Currie (Nov. 25, 1988), Trumbull App. No. 4065, unreported. Unlike Peters and Griffin, however, Ohio Bell was unaware its actions had blocked plaintiffs' ingress to the property. Indeed, once it was made aware of that situation, it offered to remove the fence, but plaintiffs failed to respond.
In response, plaintiffs note that Ohio Bell continued to pay taxes on the property. The affidavits submitted in support of plaintiffs' summary judgment motion, however, do not support that assertion. As a result, plaintiffs' claims of a holdover tenant are premised entirely on the fence, the curb bumpers, and the shrubs. Given the evidence before the trial court, we are unable to conclude the trial court erred in finding the facts insufficient to reflect a holdover by continued occupancy.
Even if Ohio Bell held over beyond the term of the lease by the fence which prevented plaintiffs' access to the property, by their actions plaintiffs failed to elect to treat Ohio Bell as a tenant. "In Ohio, a tenant who holds over after the term of his lease expires is a tenant at sufferance." Craig Wrecking Company v. S.G. Lowendick Sons, Inc. (1987), 38 Ohio App.3d 79, 81. "As such, the landlord may elect to treat the tenant as a trespasser, or hold him to a new lease term. * * * Although the presumption is rebuttable, the new term may arise from the conduct of the parties regardless of the intentions of the tenant alone. The election to hold the tenant to a new term lies with the landlord and his acceptance of rent implies an election to treat the tenant as a holdover. Absent any agreement to the contrary, the new lease term is governed by the provisions of the original lease." (Citations omitted.) Id.
For eleven months, plaintiffs allowed Ohio Bell to remain on the premises without demanding rent from it. Having failed to demand rental payments, plaintiffs in effect elected to treat Ohio Bell as a trespasser. As a result, although plaintiffs may have legal remedy to force removal of the fence and any other impediment to plaintiffs' use of the property, they may not now claim Ohio Bell is a tenant.
For the foregoing reasons, we overrule plaintiffs' single assignment of error and affirm the judgment of the trial court.
BRYANT, P.J., LAZARUS and DESHLER, JJ., concur.