DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
On remand from an earlier appeal, the Common Pleas Court of Wayne County ordered Randy Wengerd to pay rent to Howard Martin and Esther Martin in the amount of $2,040, but denied the Martins' request for attorney fees and costs. The Martins have appealed from this judgment.
The Martins have asserted that the trial court erred by (1) reducing the monthly rent for the period of litigation; (2) denying their request for attorney fees; and (3) refusing to tax the transcript expenses of the prior appeal to Wengerd as costs.
 I A. Procedural Background
Wengerd entered into an agreement to lease farmland owned by the Martins from May 1, 1993, to April 30, 1997. The agreement also contained a provision through which Wengerd could purchase the property from the Martins toward the end of the lease period. Under the terms of the lease, Wengerd was to use the premises exclusively and continuously for the purpose of conducting a general purpose dairy farm. Wengerd failed to do so and the Martins filed a claim for restitution of the premises, back rent, and attorney fees. Their claim was filed as a counterclaim to a complaint by Wengerd seeking specific performance on the purchase option.[1]
The trial court dismissed the counterclaim for forcible entry and detainer, rent, and attorney fees. On appeal, the Martins "claim[ed] the court erred in dismissing their counterclaim forrestitution and for rent beginning December 1996." (Emphasis added.) Wengerd v. Martin (May 6, 1998), Wayne App. No. 97CA0046, unreported, at 7. In remanding the matter to the trial court, this court noted, "Given our reversal of the trial court's order, we find this error well taken and remand these issues to the trial court for determination." (Emphasis added.) Id.
On remand the Martins dismissed the claim for restitution of the premises, because Wengerd surrendered possession of the premises before the matter came to trial. The counterclaim for rent was tried. In its remand judgment on the counterclaim, the trial court observed that the Martins had refused to accept tendered rent checks for the first two months during which Wengerd had possession of the premises and paid no rent. The court determined that Wengerd was using only the house trailer and the dairy barn, and prorated the rent according to Schedule 1 that was attached to the lease. Of the $625 monthly rent, Schedule 1 assigned $240 of it to the trailer, $100 to the dairy barn, $100 to the old shop, $100 to the machinery shed, and $85 to the pasture. Based on that, the trial court awarded the Martins $340 a month for each of the six months, a total of $2040.[2]
On remand, the Martins again moved the trial court for attorney fees. The Martins asserted that the mutual indemnity clause in the lease agreement required Wengerd to bear the responsibility for attorney fees the Martins incurred as a result of Wengerd's breach of the lease. The trial court denied attorney fees, stating that, "This is an indemnification clause which has no application here."
Finally, the Martins moved the trial court to tax the expenses they incurred for the preparation of a transcript, for the purposes of appeal, as costs. The trial court did not rule on the motion to tax the costs of the transcript to Wengerd.
 Interactions Between the Parties
The essential facts are undisputed. The written lease calls for Wengerd to pay the Martins $625 a month in rent. The lease specifies that "any reference in this lease to the term of the lease shall include not only the primary term, but, where applicable or [sic] any period prior to surrender of the Premises." It also includes a covenant by Wengerd that "during the term of this lease * * * he will promptly pay the [$625] rent when due." In the event of default by Wengerd, Martin had the right to both restitution of the premises and to "any rent unpaid under this lease until the expiration of the term thereof."
The lease agreement consistently describes the property being leased as "the Premises," without reference to smaller portions of the property, with two exceptions. The paragraph labeled, "Description, Construction of Improvements and Use of Premises," describes the various portions of the Martins' property that were part of the lease to Wengerd, and designates those portions collectively "the Premises." Similarly, SCHEDULE 1, allocates a portion of the rental fee to each identifiable portion of the leased property. The lease does not provide for Wengerd to rent any smaller portion of the premises.
Wengerd retained possession of the property from the inception of the lease until the end of June 1998. There was no testimony that Wengerd possessed only a portion of the area described as "the Premises" from December 1996 through June 1997, the period during which he did not pay rent. In the 1997 trial, Wengerd was questioned about his possession of the entire premises, and about his possession of the pasture. Wengerd specifically denied having abandoned the premises or the pasture. In the 1998 trial the Martins asserted, without contradiction, that Wengerd had control of the entire premises through June 1998.
Wengerd paid Martin $625 a month from the inception of the lease through November 1996. In November and early December of 1996 each party made demands on the other, which culminated in the instant litigation.[3] November 1, 1996, the Martins notified Wengerd that they were exercising their right under the lease agreement to possession of the premises because Wengerd was in default, and because he had failed to cure the default despite notice to do so. The Martins' notice also informed Wengerd that they intended to hold him "liable for any unpaid rent under the Lease Agreement until the expiration of the term." On December 9, 1996, the Martins served notice on Wengerd, pursuant to R.C.1923.04, to vacate the premises within three days or face eviction proceedings.
Wengerd tendered rent for December 1996 and January 1997, but the Martins refused to accept it. Wengerd did not pay any rent from December 1996 through June 1997. During the 1997 trial, Wengerd agreed that the rent is "Six Hundred and Twenty-Five Dollars a month" and testified that, "I expect to pay [the rent]" for the period during which he lived there rent-free. Following the decision in the 1997 trial, Wengerd resumed paying $625 a month for the premises.[4] From December 1996 through Wengerd's surrender of possession of the property to them in July 1998, the Martins continued to seek rent in the amount of $625 a month.
 II A. Rent Reduction
In Ohio, an individual who lawfully enters premises, but remains in occupancy of the premises after his right to do so has terminated is a tenant at sufferance. Palmer v. O'Leary (Dec. 3, 1975) Summit App. No. 7745, unreported, at 5(Cook, J., dissenting). In that event, the landlord may treat the tenant as a trespasser, or may choose to hold the tenant to a new lease term.
 In such cases, the conduct of the parties determines whether an implied contract arises. For example, if the tenant holds over and continues paying the same rent, an implied contract arises and is governed by the provisions of the original lease. The same result is reached if a tenant remains on the premises and fails to pay the rent.
 (Internal citations omitted.) Steiner v. Minkowski (1991), 72 Ohio App.3d 754, 762. Unless modified by the parties, the terms of the implied lease are those previously agreed to by the parties. See Bumiller v. Walker (1917), 95 Ohio St. 344, 349.
Wengerd lawfully entered the premises he rented from the Martins pursuant to a written lease. He breached that lease, and his contractual right to occupy the premises pursuant to the written lease terminated sometime before November 30, 1996. SeeWengerd v. Martin (May 6, 1998), Wayne App. No. 97CA0046, unreported, at 5-7. Wengerd was, from the termination of his contractual right to occupy the premises, a tenant at sufferance.
The Martins had the option of treating Wengerd as a trespasser or as a holdover tenant. Although the trial court judgment did not explicitly characterize the relationship between the parties, it referred to the damages owed to the Martins by Wengerd as rent. We understand this to mean that the trial court considered the parties to have a landlord-tenant relationship for the period from December 1996 through June 1997, rather than a landowner-trespasser relationship in which case the damages would probably not have been described as rent. Such a determination is consistent with the actions of the parties.
Because Wengerd was treated as a holdover tenant by the Martins, there is a rebuttable presumption that the terms of the implied lease are those to which the parties had earlier explicitly agreed. See Craig Wrecking Co. v. S. G. Loewendick Sons, Inc. (1987), 38 Ohio App.3d 79, 81-82. That presumption can be rebutted by a showing that the parties modified their agreement either explicitly, or by their conduct. Id. Therefore, the trial court's award of a diminished monthly rent would only have been proper if the undisputed facts supported the legal conclusion that the parties had modified the terms of the implied lease.
The trial court did not explicitly find that the parties modified either the monthly rent, or the portion of the premises occupied by Wengerd when he became a tenant at sufferance. If the judgment is read as implicitly making such a finding, the undisputed evidence does not support it. There was no testimony that the parties expressly modified their agreement. Likewise, there was no testimony from which a conclusion could be drawn that the parties had, by their conduct, modified their agreement.
The original lease between the parties was for an area collectively referred to in the lease as the premises. The lease did not provide for Wengerd to selectively rent portions of the premises. Wengerd testified that he had not abandoned the premises, and specifically that he had not abandoned the pasture. Martin testified that Wengerd was in possession of the entire premises.
The trial court awarded rent for the trailer and for the dairy barn but not for shop, the machinery shed, and the pasture. Implicit in that award is a finding that Wengerd only possessed the house trailer and the dairy barn for the seven month period in question. This is explicitly contradicted by Wengerd's testimony that he had not abandoned the pasture, a portion of the premises for which rent was denied. It is also generally contradicted by the testimony of Wengerd and Martin that Wengerd possessed or, in the alternative had not abandoned, the entire premises until the end of June 1998.
Possession of the entire premises aside, the parties could still have agreed to modify the rent during the period. The conduct and statements of the parties, however, do not support this conclusion. Wengerd paid rent in the amount of $625 a month until the start of the legal action. During the initial trial Wengerd testified that the rent was $625 a month, and that he expected to pay it for the period from December 1996 through the June 1997 trial court decision. Following the initial decision of the trial court Wengerd resumed paying rent, apparently at $625 a month, and continued for a year thereafter.
In like manner, the Martins have consistently sought damages in the amount of $625 a month for December 1996 through June 1997. On the advice of their attorney, the Martins did refuse the rent tendered by Wengerd in December 1996 and January 1997. Because acceptance of future rent is inconsistent with maintaining an action in forcible entry and detainer, the Martins could not accept rent from Wengerd without jeopardizing their attempt to evict him. See Presidential Park Apts. v. Colston (App. 1980), 17 O.O.3d 220, 221. The refusal to accept rent, the acceptance of which might have waived their right to evict, does not indicate their agreement to a lesser rent.
The express intent of the original lease was that Wengerd would be liable for the full amount of rent under the contract, even if he defaulted during the contract period. The term of the original lease continued through April 30, 1997, covering five of the seven months for which rent was not paid. In the notice of default they served on Wengerd, the Martins repeated their understanding that, even though he had defaulted, Wengerd was still liable for rent for the full primary term of the lease.
The lease explicitly provides that the phrase "term of the lease" includes any period prior to surrender of the premises. Wengerd did not surrender possession of the premises until July 1998. The phrase "during the term of the lease" is used to describe Wengerd's covenant to pay rent. It is likely that the drafter of this clause contemplated a mutually agreeable extension of the original lease. Nonetheless, the language suggests that the parties intended that so long as Wengerd had not surrendered possession he was subject to the covenants made in the lease, including the covenant to pay the $625 monthly rent.
Pursuant to their lease agreement, Wengerd had a contractual obligation to pay $625 a month rent to the Martins through April 30, 1997. In addition, because the Martins elected to treat Wengerd as a tenant, rather than a trespasser, Wengerd owes them rent pursuant to the implied contract. The terms of that implied contract are presumed to be those explicitly agreed to by the parties in their prior written lease. We find that the undisputed conduct of the parties during the holdover period did not modify either the estate or the monthly rent, to which they had previously agreed, as a matter of law.
The Martins' first assignment of error is sustained.
 B. Attorney Fees
A party seeking attorney fees must generally present evidence to support an award of fees before the final judgment is entered. See Shepherd v. Shea (May 14, 1997), Summit App. No. 17974, unreported, at 4. If it is impracticable to present a request for attorney fees as part of the case, the party seeking fees may request a bifurcation of the trial, pursuant to Civ.R. 42(B), so that the matter of fees can be litigated separately from liability. Fair Housing Advocates Assoc. Inc. v. James (Sept. 18, 1996), Summit App. No. 17622, unreported, at 5. A party who fails to raise an error on initial appeal, waives the right to have that asserted error reviewed later. See Whitehead v. General Tel. Co.
(1969), 20 Ohio St.2d 108, paragraph one of the syllabus, overruled in part, on other grounds (1995), Grava v. Parkman Twp.,73 Ohio St.3d 379, syllabus.
When a case is remanded for a limited purpose, "the trial court [is] obliged to accept all issues previously adjudicated as finally settled." Blackwell v. Internatl. Union, UAW (1984),21 Ohio App.3d 110, 112.
In their initial pleading, the Martins counterclaimed for restitution of the property to their possession, back rent, and attorney fees. Although the request for attorney fees was part of their counterclaim, the Martins did not introduce evidence of their attorney fees or of Wengerd's purported obligation to pay them. Nor did they move for a bifurcation of the trial so that the matter of attorney fees could be considered separately. Because the Martins did not introduce evidence as to the matter of attorney fees during the initial trial of this case and did not move for a separate trial on the matter, they have waived any right they may have had to attorney fees.
Although the trial court initially dismissed their request for attorney fees when it dismissed their entire counterclaim, the Martins did not raise the dismissal of their claim for attorney fees as part of their appeal of the June 1997 final judgment of the trial court.[5] The error, if it was one, existed at the time of the June 1997 judgment. Because the Martins did not assert as part of their initial appeal that the dismissal of their request for attorney fees was improper, they waived their right to assert that error for review during a subsequent appeal.
The Martins have already had opportunity for a full review of any potential errors made by the trial court. As a result of that review, this court remanded the matter for a limited and specific purpose, saying,
 In their fourth and final assignment of error, the Martins claim the court erred in dismissing their counterclaim for restitution and for rent beginning December 1996 when, due to the dispute involved herein, the Martins began refusing to accept Wengerd's rent payments although he remained on the property. * * * Given our reversal of the trial court's order, we find this error well taken and remand these issues to the trial court for determination.
 (Emphasis added.) Wengerd v. Martin (May 6, 1998), Wayne App. No. 97CA0046, unreported, at 7. The issues the trial court was permitted to revisit on remand were rent and restitution of the premises to the Martins. All other issues that were part of the initial adjudication, were finally settled by our prior judgment.
The Martins' second assignment of error is overruled.
 Transcript Costs
The process by which the expenses of a transcript are handled by the office of the Clerk of Courts is governed by R.C. 2303.21. It provides that "the expense of procuring such transcript * * * shall be taxed in the bill of costs and recovered as in other cases." The rules of appellate procedure provide for the assessment of costs to the parties to an appeal. App.R. 24. The assessment of the costs is exclusively within the jurisdiction of the appellate court. Munroe v. Munroe (1997), 119 Ohio App.3d 530, 545, quoting Crest Mgt., Inc. v. McGrath (July 6, 1994), Summit App. No. 16579, unreported, at 5-6. Whatever apportionment is made by the court of appeals, the costs assessed include, by definition, "expense incurred in preparation of the record, including the transcript of proceedings." App.R. 24(B).
On remand, the Martins moved the trial court to tax the costs of the transcript for the initial appeal to Wengerd. The trial court did not act on the motion before it rendered judgment, and by doing so it implicitly denied the motion. Solon v. SolonBaptist Temple, Inc. (1982), 8 Ohio App.3d 347, 351-352. Whether or not the proper party ultimately paid for preparing the transcript of proceedings for appeal, the trial court's subsilentio denial of the Martins' motion was not error.[6]
Because the assessment of costs on appeal is exclusively within the jurisdiction of the appellate court, the trial court could not properly have granted their motion.
The Martins third assignment of error is overruled.
 III
The Martins first assignment of error is sustained because the trial court erred, as a matter of law, by reducing the rent Wengerd owed to the Martins from December 1996 through June 1997. Because the Martins failed to pursue the matter of attorney fees at the proper time and by the proper means, they have waived their right to appellate review of the earlier trial court dismissal of their claim for attorney fees. Their second assignment of error is overruled. The Martins' third assignment of error is overruled because the trial court did not have jurisdiction to grant the Martins' motion that the transcript for the prior appeal be taxed as costs.
The judgment of the trial court is reversed, as to the rent Wengerd owes to the Martins, and the matter is remanded to the trial court. As a matter of law, Wengerd owes the Martins $625 rent per month for each of the seven months from December 1996 through June 1997. The trial court is instructed to enter judgment in favor of the Martins for $4375, plus interest from the date of the trial court judgment and costs. The remainder of the judgment of the trial court is affirmed.
Judgment affirmed in part, reversed in part and cause, remanded with instructions.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________ WILLIAM R. BAIRD
FOR THE COURT SLABY, J.
CARR, J. CONCUR
[1] All matters related to the purchase option were resolved in the prior appeal. Wengerd v. Martin (May 6, 1998), Wayne App. No. 97CA0046, unreported.
The counterclaim made by the Martins was framed as an action for forcible entry and detainer. R.C. 1923.01. On December 9, 1996, the Martins gave Wengerd a three day notice that "on or before December 12, 1996, [he was] to vacate and leave the premises." See R.C. 1923.04. On December 12, 1996, the day before the Martins could have filed their action for forcible entry and detainer pursuant to R.C. 1923.01, Wengerd filed a complaint seeking specific performance. Martin filed a counterclaim for restitution of the premises, and for damages arising out of Wengerd's continued occupancy from December 1996 on. Because neither party asserted that a forcible entry and detainer claim could not properly be brought as a counterclaim to a claim for specific performance, that question is not examined here. We treat the counterclaim as subject to the law governing forcible entry and detainer claims to the extent necessary to resolve the claim for back rent.
[2] The judgment of the trial court states that the "Martins want $4375.00 in rent for six (6) months (December, 1996, through June, 1997) at $625 a month." The period from December 1996 through June 1997 is seven months. The Martins' request is consistent with a seven month period. The award of the trial court was for six months only.
[3] Many of the demands are unrelated to the current appeal; the demands recited here are those that are relevant to this decision.
[4] Although it was not explicitly stated during the trial, the only reasonable conclusion that can be drawn from the testimony is that the amount paid from July 1997 through June 1998 was $625 a month. Howard Martin was questioned about the rent under the lease. He responded that it was $625. After explaining that Wengerd lived on the premises until June 1998, Martin was asked, "was there a part of that time where the rent wasn't paid, Six Hundred and Twenty-Five Dollars?" He responded, "Yeah, back to December of '96 through June of '97." A similar exchange took place when he was asked about the fair market rental value of the property.
[5] If the Martins believed that they raised the issue of attorney fees on initial appeal, but that it was not properly reflected in the judgment it was their responsibility to bring their concern to the attention of this court by means of a motion for reconsideration, pursuant to App.R. 26(A).
[6] In the initial appeal, this court ordered, "Costs taxed to appellee." Wengerd v. Martin (May 6, 1998), Wayne App. No. 97CA0046. Those costs should have included, by definition, the expenses of preparation of the transcript and "were to be recovered as in other cases." R.C. 2303.21. The record does not contain an accounting of the costs for the previous appeal, nor was one submitted by either party, so it is impossible for this court to determine whether the costs actually paid by Wengerd included the expenses of the preparation of the transcript.