[Cite as *Knipp v. Sadler*, 2009-Ohio-4444.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY


PATRICK M. KNIPP,                                    CASE NO. 6-09-04

   PLAINTIFF-APPELLEE,

 v.

MITCH SADLER,                                        **O P I N I O N**

   DEFENDANT-APPELLANT.


**Appeal from Hardin County Municipal Court**
**Trial Court No. CVF 0700185**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  August 31, 2009**


**APPEARANCES:**

   *Terry L. Hord* for Appellant

   *Dawn Nation* for Appellee

**WILLAMOWSKI, J.**

{¶1} The defendant-appellant, Mitch Sadler, appeals the judgment of the Hardin County Municipal Court awarding him damages of $69.95 in a landlord-tenant dispute. On appeal, Sadler contends that the judgment was contrary to law and against the manifest weight of the evidence, and that the trial court erred by denying him attorney's fees. For the reasons set forth herein, the judgment of the trial court is reversed.

{¶2} The plaintiff-appellee, Patrick Knipp, and his wife leased an apartment owned by Sadler and located in Ada, Ohio from September 1, 2004 through May 31, 2005 pursuant to a written lease agreement. At the expiration of the agreement, the Knipps opted to remain in the apartment for another year; however, a new written lease was not created. The Knipps vacated the apartment on December 1, 2006. To pay for damages to the apartment and unpaid rent, Sadler did not return any of the security deposit.

{¶3} On February 8, 2007, Knipp filed a petition in the Hardin County Municipal Court Small Claims Division seeking damages for the return of the security deposit he had made on the apartment. On April 9, 2007, Sadler filed a motion to transfer the petition to the civil division, which the court granted on April 10, 2007. On April 23, 2007, Sadler filed his answer and a counterclaim, asserting that Knipp had not provided adequate notice of the termination of the

lease and seeking compensatory damages for an additional month of rent, for damages to the apartment, and for unpaid natural gas bills. On May 10, 2007, Knipp filed a reply to Sadler's answer and his answer to the counterclaim.

{¶4} The court held a bench trial on June 10, 2008, and on June 12 and 17, 2008, each party's attorney submitted their statement for attorney's fees. On February 11, 2009, the trial court filed its judgment entry in which it awarded double damages to Knipp for Sadler's untimely notice of the itemized deductions from Knipp's security deposit. The court also awarded certain claimed damages to Sadler. The court's order resulted in a judgment of $69.95 plus interest in favor of Sadler on his counterclaim.

{¶5} On February 23, 2009, Sadler requested findings of fact and conclusions of law, which the court filed on March 13, 2009. Sadler filed his notice of appeal on March 13, 2009, challenging the judgment of the trial court. On appeal, Sadler sets forth two assignments of error for our review.

*First Assignment of Error*

**The trial court's decision was against the manifest weight of the evidence and in contravention of the landlord tenant laws.**

*Second Assignment of Error*

**The trial court erred in awarding attorney fees to the plaintiff-appellee when they were not prayed for and then used equity to offset the proper attorney fees that were prayed for by the defendant-appellant, and the plaintiff-appellee did not make the necessary conditions precedent to award the same in the alternative.**

{¶6} In his first assignment of error, Sadler contends that the trial court erred by neglecting to address the written terms of the lease agreement, which required notification of termination or non-renewal to be in writing. Sadler alleges that Knipp also failed to provide 30 days notice prior to terminating the lease as required by R.C. 5321.17(B) and the lease agreement. Sadler also claims that Knipp failed to provide written notice of his forwarding address as required by R.C. 5321.16(B). Sadler contends that even if Knipp was entitled to double damages by statute based on his untimely notice of the itemized deductions from the security deposit, Sadler contends that he may assert his arguments in a counterclaim or as set-off.

{¶7} The Supreme Court of Ohio has established the civil manifest weight of the evidence standard of review. *In C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus, the court stated, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See also *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 24 (reaffirming the standard set forth in *C.E. Morris*). An appellate court must "presume that the findings of the trier of fact are correct" since "the trial judge had an opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these

observations in weighing the credibility of the proffered testimony.'" *Wilson*, at ¶ 24, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273. Reversal based on an error of law is legitimate; however, the trial court's decision should not be reversed based on a "difference of opinion on credibility of witnesses and evidence * * * ." Id., quoting *Seasons Coal*, at 81.

{¶8} In its judgment entry, the trial court found that the parties had executed a written lease agreement covering a specific lease term. At the end of the term, the lease was verbally continued as a periodic tenancy on a month-to-month basis "with terms consistent with the prior written lease." The trial court determined that Knipp had given Sadler "verbal notice well prior to November 1, 2006 that he and his wife were terminating the lease on November 31, 2006."

{¶9} In dealing with holdover tenants, a landlord may treat the tenants as trespassers or hold them to a new lease. *Steiner v. Minkowski* (1991), 72 Ohio App.3d 754, 762, 596 N.E.2d 492, citing *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.* (1987), 38 Ohio App.3d 79, 81, 526 N.E.2d 321. "In such cases, the conduct of the parties determines whether an implied contract arises. * * * For example, if the tenant holds over and continues paying the same rent, an implied contract arises and is governed by the provisions of the original lease." Id., citing *Craig Wrecking*, at 81. As noted by the trial court, a month-to-month tenancy was created when the parties continued the lease, which required monthly rent payments, without the benefit of a new or updated contract.

{¶10} Ohio law is clear that under a month-to-month lease, the tenant must give the landlord at least 30 days notice prior to terminating or not renewing the lease agreement. R.C. 5321.17(B). See also *Maggiore v. Kovach*, 101 Ohio St.3d 184, 2004-Ohio-722, 803 N.E.2d 790. The lease agreement stated:

> **Vacating Premises: Upon the termination of the rental agreement Tenant(s) shall yield immediate possession to Owner and return the keys for said premises to Owner. Tenant(s) agrees to vacate premises in a very clean condition *and in writing*, thirty days in advance of his intention to vacate. Security deposit will be returned only if such (30) day notice is given. \* \* \* *Tenant(s) moving out on or after the first day of the month are responsible for the rent payment for the entire month*.**

(Emphasis added). Trial Tr., Apr. 17, 2009, at Pl.'s Ex. 1, ¶ 8.

{¶11} At trial, Knipp testified that he had provided oral notice to Sadler, both in person and by telephone, on several occasions since June 2006 that he and his wife would be vacating the apartment in either November or December 2006. Id. at 6:4-5; 13:25; 14:1. The last oral notice to Sadler was given by telephone in November 2006. Id. at 19:16-19. Knipp admitted that he had never provided written notice to Sadler. Id. at 14:3; 31:20. Knipp also testified that he and his wife moved out of the apartment on December 1, 2006, and had offered to pro-rate December's rent to pay Sadler for the extra day they had lived in the apartment. Id. at 6:1; 20:2-6.

{¶12} Sadler testified that he received a voicemail from Knipp on November 21, 2006, informing him that Knipp and his wife would be vacating the

apartment by December 1, 2006. Id. at 41:8-13. Sadler stated that he was surprised by the news because it was the first time he had heard anything about the Knipps moving. Id. at 41:12.

{¶13} Although R.C. 5321.17(B) does not require *written* notice 30 days prior to the end of the lease, the parties' contract did contain such a requirement. The trial court found that Sadler had received oral notice of the termination "well prior to November 1, 2006." Based on Knipp's testimony, there is some competent and credible evidence on the record to support the trial court's finding. Although Knipp did not provide written notice, several appellate districts have held that such a requirement is "both hypertechnical and unconscionable" where the tenant has "timely substantially complied, but not in writing, with the lease provision, and the landlord has actual knowledge of the tenant's intent to vacate at the expiration of the lease term * * * ." *Meadowbrook Dev. Corp. v. Roberts*, 8th Dist. No. 79747, 2001-Ohio-4176 citing *McGowan v. DM Group IX* (1982), 7 Ohio App.3d 349, 455 N.E.2d 1052, at syllabus; *Ballard v. KMG Investors, Ltd. Partnership, d/b/a Evergreen Apts.* (Aug. 3, 1993), 3d Dist. No. 14-93-5; *Seginak v. ABC Mgt. Co.* (Sept. 18, 1987), 11th Dist. No. 3816. See also *Adair v. Landis Properties*, 10th Dist. No. 08AP-139, 2008-Ohio-4593, at ¶ 14 (citations omitted). Therefore, there was no error in what Sadler believes to be the trial court's failure to consider the terms of the written lease agreement.

**{¶14}** In regard to the date the lease was terminated and possession was surrendered, the trial court erred by finding that Knipp had moved out of the apartment on November 31, 2006. Our disagreement with the trial court's decision is not based on our weighing of the evidence; instead, there is simply *no* evidence in the record to support the lower court's finding, particularly when Knipp admitted surrendering possession on December 1, 2006. Pursuant to the terms of the lease agreement, which were applicable to the periodic tenancy created on June 1, 2005, Knipp was responsible to pay rent for the month of December 2006. *Steiner*, at 762; Trial Tr., at Pl.'s Ex. 1, ¶ 8.

**{¶15}** Having determined that Knipp was responsible to pay rent for the month of December 2006, we review Sadler's actions following the termination of the lease agreement. R.C. 5321.16 sets forth procedures, rights, and obligations concerning security deposits.

> **(B)      Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be**

**entitled to damages or attorneys fees under division (C) of this section.**

**(C)     If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees.**

R.C. 5321.16.   The plain and unambiguous language of the statute requires a landlord to provide written notice of any itemized deductions to the tenant within 30 days after the lease terminates and possession is delivered.  However, a tenant has a reciprocal duty to provide a forwarding address in writing to the landlord.

{¶16} Knipp testified that on December 1, 2006, he placed the keys to the apartment in an envelope, wrote his forwarding address on the envelope, and delivered the envelope containing the keys to Sadler's residence, as Sadler was unavailable on that date.  Trial Tr., at 16:16-18; 17:16-17; 24:10-15.   Sadler testified that the keys, which were not in an envelope, were left in his mailbox.  Id. at 42:6-11.

{¶17} Sadler inspected the apartment several days after the Knipps vacated the premises and noted several damaged items, including a stained carpet in the living area and a ruined refrigerator.  Sadler testified that the apartment smelled musty and had an odor of urine, which got stronger over time.  Id. at 42-44. Sadler noted that the Knipps had made a good attempt to clean the apartment; however, when Sadler opened the refrigerator, which had been unplugged, he

smelled an odor that "about knocked me on the floor." Id. at 42:23-26. Under the crisper drawers, Sadler located meat juices, which were causing the strong odor. Id. at 43:1-4. Ultimately, Sadler was unable to dissipate the odor and replaced the refrigerator with a comparable, used refrigerator at a cost of $225. Id. at 58:2-20; Def.'s Ex. A. As to the carpet, Sadler testified that he had had the carpet professionally cleaned and deodorized, but the odors still lingered. Id. at Def.'s Ex. B. Sadler presented two estimates for carpet replacement to the court, ranging from $875 to $1,186.41. Id. at Def.'s Ex. C; E. Sadler also testified that "[t]here was a cracked window that I, I repaired it. Don't know what caused it, but I repaired it." Id. at 51. Sadler presented no other testimony concerning damages to the apartment.

{¶18} Knipp testified that he and his wife had thoroughly cleaned the apartment, including the appliances; that he had unplugged the refrigerator and left the door open so as not to use electricity; and that their eight-pound dog had never soiled on the carpet. Id. at 16:8-14; 21-22; 23:14-23.

{¶19} The trial court, relying on a construction company's estimate, awarded Sadler $275 for the replacement refrigerator, $85 to repair broken glass; $85 for debris removal; and $244.95 for the actual cost of cleaning and deodorizing the carpet. J. Entry, Feb. 11, 2009. The trial court determined that the estimates for replacing the carpet were unreasonable and did not award those damages to Sadler. Id.

{¶20} R.C. 5321.05 sets forth a tenant's obligations, including that the tenant shall "[m]aintain in good working order and condition any range, regrigerator [sic], washer, dryer, dishwasher, or other appliances supplied by the landlord and required to be maintained by the tenant under the terms and conditions of a written rental agreement;" and to otherwise "[k]eep that part of the premises that he occupies and uses safe and sanitary[.]" R.C. 5321.05(A)(1), (7). If a tenant violates R.C. 5321.05(A)(1)-(8), the landlord "may recover any *actual* damages that result from the violation together with reasonable attorney's fees." (Emphasis added). R.C. 5321.05(C)(1). Reading R.C. 5321.05 and 5321.16 in pari materia, it appears that the landlord may deduct the actual amount of damages suffered due to the tenant's violation(s) of R.C. 5321.05(A) and must also comply with notice provisions.

{¶21} In awarding double damages to Knipp under R.C. 5321.16(C), the trial court apparently believed Knipp that he had provided written notice of his forwarding address. Such finding is supported by competent and credible evidence in Knipp's testimony as set forth above. The evidence was undisputed that Sadler's attorney sent a letter, dated January 30, 2007, to Knipp discussing estimates for damages. Trial Tr., at Pl.'s Ex. 10. The trial court found that the letter was not only late, but did not "set forth a figure being withheld that reflects the actual damage done and the reasonableness of the same." J. Entry, Feb. 11, 2009.

{¶22} A tenant's violation of R.C. 5321.05(A) does not relieve the landlord of the notice requirements in R.C. 5321.16(B), and the trial court's factual findings in that regard are supported by the record. Knipp was entitled to the return of the security deposit.[1] As to the double damages provision, the Supreme Court of Ohio has clarified that a landlord's "failure to comply with R.C. 5321.16(B) and to provide the tenant with a list of itemized deductions renders the landlord liable for double damages only as to the amount wrongfully withheld and not as to the entire amount of the security deposit." *Vardeman v. Llewellyn* (1985), 17 Ohio St.3d 24, 29, 476 N.E.2d 1038. Therefore, we must determine whether the damages awarded to Sadler exceeded Knipp's deposit before double damages can be awarded to Knipp.

{¶23} There is no statutory language preventing Sadler from recovering for unpaid rent and/or actual damages based on his failure to comply with the notice provisions of R.C. 5321.16(B). See generally *Vardeman*. Having reviewed the entire record, there is no evidence to support the trial court's award of $275 for a replacement refrigerator, $85 for the broken glass, or $85 for debris removal. Each of those amounts was provided to the court by Sadler in an estimate he had

---

[1] In his testimony, Sadler indicated that the pet deposit of $200 was non-refundable. However, the lease agreement contains a paragraph that discusses the security deposit, which states in part, "Tenant(s) agrees to deposit with the Owner the sum of $350.00 plus Pet Deposit to guarantee the return of the premises to the Owner at the termination of this Rental Agreement in as good condition as accepted * * * ." Trial Tr., at Pl.'s Ex. 1, ¶ 5. Under paragraph 11, entitled "Pets," the lease agreement identifies the amount of the pet deposit as $200 and indicates that Knipp could keep one eight-pound dog named Yoshimi in the apartment. Id. at Pl.'s Ex. 1, ¶ 11. Reading the document as a whole, it is apparent that the pet deposit was refundable under paragraph 5 as part of the security deposit.

obtained from a construction company. Trial Tr., at Def.'s Ex. E. As stated above, Sadler testified that he repaired the cracked window himself. There was no testimony that the construction company did any work on the premises, including glass repair and/or debris removal. Again, our disagreement with the trial court's determination is not based on a matter of credibility or weight, but on the basis that there is no support in the record to award actual damages based on estimates for work that was never completed.

{¶24} As to actual damages sustained, Sadler provided the court with a receipt for the cost of the replacement refrigerator, which was $225. Id. at Def.'s Ex. A. Per R.C. 5321.05(C)(1), Sadler is entitled to his actual damages, which were $225 for the replacement refrigerator and the cost of the carpet cleaning in the amount of $244.95. Id. at Def.'s Ex. B. The trial court's awards to Sadler based on Def.'s Ex. E are against the manifest weight of the evidence and contrary to R.C. 5321.05(C)(1).

{¶25} For the foregoing reasons, the first assignment of error is sustained. On remand, the trial court must determine the amount, if any, Sadler is due for unpaid utilities for the month of December 2006.[2] Also on remand, the trial court is directed to enter judgment consistent with this opinion. Since Sadler's damages for unpaid rent for December 2006 plus the damages incurred under R.C.

---

[2] The trial court determined that Knipp was also liable for unpaid natural gas bills totaling $480, and the record supports such a finding.

5321.05(A) exceed Knipp's security deposit of $550, Knipp is not entitled to double damages.

{¶26} The second assignment of error states that the trial court erred by awarding attorney's fees to Knipp. However, in his limited appellate argument, Sadler contends that the trial court awarded attorney's fees to Knipp but "used equity to cancel the attorney fees" to Sadler. In fact, the trial court determined that neither party was entitled to attorney's fees because they each had unclean hands. However, Knipp was not entitled to attorney's fees, whether requested or not. See *Vardeman*, at 29 (attorney's fees under R.C. 5321.16(C) "may be awarded only when a tenant prevails on his claim for damages based upon the trial court's finding that the landlord has wrongfully withheld any amount due the tenant.").

{¶27} In regard to Sadler's request for attorney's fees[3], the trial court refused to award attorney's fees based on Sadler's unclean hands. In light of our holding concerning Knipp's attorney's fees and our holding concerning the merits of the litigation, the trial court should again review Sadler's request without presuming he had unclean hands. The second assignment of error is sustained. On remand, the trial court is directed to ascertain if any attorney's fees are due to Sadler.

---

[3] This court notes that R.C. 5321.13(C) holds that no agreement for attorney fees in a rental agreement or any other agreement will be recognized. However R.C. 5321.05(C)(1) provides for the possibility of attorney fees. The determination as to whether either statute applies to this case is left to the trial court.

**{¶28}** Having sustained the assignments of error, the judgment of the Hardin County Municipal Court is reversed.  This matter is remanded for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON, P.J., and SHAW, J., concur.**