[Cite as *Adams v. Relmax*, 2018-Ohio-1751.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106142**

---

**ADRIA ADAMS**

PLAINTIFF-APPELLEE

vs.

**RELMAX**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cleveland Heights Municipal Court
Case No. CV-17-00601

**BEFORE:** McCormack, J., E.A. Gallagher, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 3, 2018

**ATTORNEYS FOR APPELLANT**

Andrew K. Shibley
David M. Dvorin
Lieberman, Dvorin & Dowd, L.L.C.
30195 Chagrin Blvd., Suite 300
Pepper Pike, OH 44124


**FOR APPELLEE**

Adria Adams, pro se
4109 Hinsdale Road
South Euclid, OH 44121


TIM McCORMACK, J.:

{¶1} Defendant-appellant Haven Realty, Inc. d.b.a. Re/Max Property Management (incorrectly identified as "Relmax," but henceforth in this opinion identified as "Re/Max") appeals from the trial court's judgment ordering it to return a security deposit in the amount of $625 to plaintiff-appellee Adria Adams ("Adams"). For the reasons that follow, we reverse.

**Procedural and Substantive History**

{¶2} On April 1, 2015, Adams and Re/Max entered into a 12-month lease agreement for an apartment in Cleveland Heights, Ohio. The lease term was from April 1, 2015, to March 31, 2016, and the monthly rent for the apartment was $625. The lease agreement provided for a holdover period as follows:

> HOLDOVER: In the event Tenant remains in possession of the Premises for any period after the expiration of the Lease Term ("Holdover Period"), a new month-to-month tenancy shall be created subject to the same terms and conditions of this Lease at a monthly rental rate of $650 per month, unless otherwise agreed

by the parties in writing. Such month-to-month tenancy shall be terminable on thirty (30) days notice by either party or on longer notice if required by law.

{¶3} On February 17, 2016, Re/Max sent Adams a letter offering her the opportunity to renew her lease. The letter informed Adams that her current lease was set to expire on April 1, 2016. Attached to the letter was a form with four options. The letter stated that if Re/Max did not receive the form with Adams's selection, her lease would automatically convert to a month-to-month lease, with all other terms of her original lease remaining the same. The four options were: (1) renewing the lease for an additional 12 months, with an increased monthly rent of $640 effective April 1, 2016; (2) renewing the lease for an additional six months, with an increased monthly rent of $650 effective April 1, 2016; (3) converting the lease to a month-to-month tenancy with an increased monthly rent of $660; or (4) moving out and submitting the form as written notice that she would vacate the property, surrender keys and possession of the property, and provide Re/Max with a forwarding address. Adams elected to renew the lease for another year, and the new expiration date of the lease was March 31, 2017.

{¶4} On March 9, 2017, Re/Max sent Adams another renewal letter, presenting her with the following four options: (1) renewing the lease for an additional 12 months, with an increased monthly rent of $650 effective May 1, 2017; (2) renewing the lease for an additional six months, with an increased monthly rent of $665 effective May 1, 2017; (3) converting the lease to a month-to-month tenancy with an increased monthly rent of $690; or (4) moving out and submitting the form as written notice that she would vacate the property, surrender keys and possession of the property, and provide Re/Max with a forwarding address. Although the letter did not specify a date by which Adams must make her selection, it included the following disclaimer:

> **Please note: Should you fail to make a selection and return this document to us, your Lease will convert to a month-to-month Lease with the above stated month-to-month rent amount. Should you decide to terminate your tenancy, we will send you move-out guidelines.**

On April 26, 2017, Adams initialed the fourth option, indicating that she planned to move out, and filled in May 1, 2017 as her move-out date.

**{¶5}** On April 29, 2017, Adams returned the keys to Re/Max and provided a forwarding address. On May 1, 2017, Re/Max sent Adams a letter notifying her that it would not be returning her security deposit because she had provided insufficient notice that she would be terminating her tenancy.

**{¶6}** On May 9, 2017, Adams filed a complaint in the Cleveland Heights Municipal Court, alleging that Re/Max had failed to return her security deposit. The municipal court held a hearing on this matter on July 17, 2017. After hearing from both parties, the court entered a judgment in favor of Adams and ordered Re/Max to return her $625 security deposit, together with interest and court costs. The court reasoned that Adams's failure to provide 30 days notice of her intent to vacate the premises was the result of Re/Max's failure to include a date by which the tenant was required to respond to the renewal letter.

**{¶7}** Re/Max appealed from this judgment, presenting two assignments of error for our review.

**Law and Analysis**

**{¶8}** In its first assignment of error, Re/Max argues that the trial court erred in determining that Adams was not required to provide 30 days notice prior to terminating the month-to-month tenancy.

**{¶9}** In a civil appeal from a bench trial, a reviewing court applies a manifest weight standard of review, guided by a presumption that the trial court's findings are correct. *3637 Green Rd. Co. v. Specialized Component Sales Co.*, 2016-Ohio-5324, 69 N.E.3d 1083, ¶ 19 (8th Dist.), citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). Questions of law are reviewed de novo, and a finding of error of law is a legitimate ground for reversal. *Id.*

**{¶10}** A tenant who holds over, or remains in possession of leased property, after the term of his lease expires is a tenant at sufferance. *Capella III L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, 940 N.E.2d 1026, ¶ 18 (10th Dist.), citing *Anderson v. Brewster*, 44 Ohio St. 576, 580, 9 N.E. 683 (1886), and *Craig Wrecking Co. v. S. G. Loewendick & Sons, Inc.*, 38 Ohio App.3d 79, 81, 526 N.E.2d 321 (10th Dist.1987). A landlord's subsequent acceptance of rent from the tenant implies an election to treat the tenant as a holdover. *Craig Wrecking Co.* at 81, citing *Baltimore & O. R. Co. v. West*, 57 Ohio St. 161, 165, 49 N.E. 344 (1897).

**{¶11}** Here, the lease term expired on March 31, 2017. Adams remained in possession of the premises until late April and continued to pay rent. Re/Max accepted her rent. Therefore, Adams became a holdover tenant in a month-to-month periodic tenancy, pursuant to Ohio law and the holdover provision of the lease agreement.

**{¶12}** R.C. 5321.16(B) provides, in relevant part:

Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing a

forwarding address or new address to which the written notice and amount due from the landlord may be sent.

{¶13} R.C. 5321.17(B) provides that "the landlord or the tenant may terminate or fail to renew a month-to-month tenancy by notice given at least thirty days prior to the periodic rental date." If a tenant fails to give the landlord the required 30-days notice of his intent to terminate the month-to-month tenancy, R.C. 5321.16(B) and 5321.17(B) allow a landlord to apply the security deposit to the amount due for rent. *Barran v. Kinas*, 8th Dist. Cuyahoga No. 85085, 2005-Ohio-2002, ¶ 15, citing *Bowman v. Community Mgt. Corp.*, 14 Ohio App.3d 31, 469 N.E.2d 1038 (1st Dist.1984), syllabus, and *Fenell v. Mayflower Manor Apts.*, 9th Dist. Summit No. 17224, 1995 Ohio App. LEXIS 5281 (Nov. 29, 1995).

{¶14} Adams provided Re/Max with approximately five days notice that she would be vacating the premises. This notice was insufficient pursuant to both her lease agreement and R.C. 5321.16(B).

{¶15} Adams argues that because her renewal letter stated that a renewed term lease or conversion to a month-to-month tenancy would be effective May 1, 2017, her April 26, 2017 response to Re/Max was sufficient notice. We disagree.

{¶16} Adams's argument is based on a misinterpretation of the renewal letter. The letter did not state that a renewed lease would be effective May 1, 2017, as Adams contends. It stated that her increased rent would be effective May 1, 2017. Adams's interpretation of the renewal letter does not account for the month of April 2017. Because her lease term ended on March 31, an effective date of May 1 for a new lease omits the month of April from either agreement. Adams's argument seems to imply that she believed that her lease agreement was somehow extended through April without explaining how or when that occurred.

{¶17} We note that neither renewal letter Re/Max sent to Adams included a date by which she must respond. We agree with the lower court that this likely created confusion. We disagree, however, that such confusion released Adams from her obligation as a holdover tenant to provide Re/Max with 30 days notice of her intent to vacate the premises. Therefore, we find that the lower court erred in determining that Adams was not required to provide Re/Max 30 days notice and was therefore entitled to her security deposit. Re/Max's second of assignment of error is moot.

{¶18} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, A.J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS (WITH SEPARATE OPINION ATTACHED).


MARY EILEEN KILBANE, J., DISSENTING:

{¶19} I respectfully dissent. I would affirm the trial court's decision ordering Re/Max to return Adams's security deposit.

{¶20} I find the 30-day notice requirement under the original lease and R.C. 5321.16(B) inapplicable to the instant case because Re/Max's March 9, 2017 letter modified a material term of the existing lease agreement by demanding a rent increase. Accordingly, the letter constituted notice of Re/Max's intent to terminate the holdover tenancy as well as an offer to create a new lease as of May 2017. I agree with the trial court's reasoning that Re/Max's failure to include a date by which Adams must respond to the letter was "misleading." As the trial court aptly noted, "there is no indication in Re/Max's letter stating a date by which [Adams] should notify [Re/Max that she was] going or staying."

{¶21} I find *Cameron v. Chateau Invest. Co.*, 9th Dist. Summit No. 15634, 1992 Ohio App. LEXIS 6070 (Nov. 25, 1992), instructive. In *Cameron*, the Ninth District Court of Appeals considered a similar letter from a landlord to the tenant, which was sent prior to the expiration of the lease term. *Id*. at 2. The letter requested the tenant renew the lease at an increased monthly rent. *Id*. The original lease included an automatic renewal provision under which the lease would be renewed for another year unless either the landlord (Chateau) or the tenant (Cameron) provided the other with written notice of termination at least 45 days prior to the end of the current lease term. *Id*. Chateau sent the letter to Cameron more than 45 days prior to the end of the lease term, requesting her response within 20 days. *Id*. The letter gave Cameron the option to renew for an additional year with a rent increase, or "in the event that [Cameron chose] not to renew * * * [she] would be considered a month-to-month tenant" at the new increased rent plus "a $20.00 per month premium." *Id*. The letter advised Cameron "[a]ll tenants are required to give written notice thirty (30) days before vacating. Failure on your part to sign this Lease renewal does not serve as notice to the Landlord of your intention to move at the expiration of the present Lease. " *Id*. at 3.

**{¶22}** Cameron never returned Chateau's letter. Instead, Cameron sent her own letter to Chateau 15 days prior to the expiration of the lease term informing Chateau of her intention to vacate the premises on the last day of the lease term. Chateau informed Cameron this was insufficient notice to terminate the lease and retained her security deposit to cover the additional month's rent, without submitting a list of deductions.

**{¶23}** The Ninth District construed this "renewal" letter as the landlord's notice that the existing lease would terminate at the end of the current rental term. The court explained "absent acceptance of these new terms, [i.e. lease renewal or holdover tenancy with rent increases,] Cameron would not have been entitled to hold over under the terms of the original lease."

**{¶24}** Likewise, in the present case, I find that Re/Max's letter demanding Adams accept a rent increase as of May 1, 2017, was notice that it would no longer allow her to hold over after the month of April 2017 under previously agreed terms. Re/Max's letter provided Adams with four options: (1) renew her lease for a 12-month term, (2) renew her lease for a 6-month period, (3) convert her current lease to a month-to-month tenancy, or (4) move and vacate the property. The lease renewal and month-to-month tenancy options all provided for increased monthly rent, at varying rates, effective May 1, 2017.

**{¶25}** Re/Max's letter is dated March 9, 2017, only 22 days before the March 31, 2017 expiration of the second lease term. The letter did not provide a date by which Adams was to respond. Under the majority's reasoning, Adams had only a 22- day period in which to reject the rent increase effective May 1, 2017. Notably, Re/Max's letter does not reference the 30-day termination notice required by the lease.

**{¶26}** Adams chose the fourth option which specifically provided:

[I] plan to move and submit this letter as [my] written notice that [I] will vacate the property, surrender keys/possession, and provide a forwarding address no later than _____.

**{¶27}** In the blank space provided Adams filled in May 1, 2017. She initialed and signed the form April 26, 2017. Adams provided five-days notice before May 1, 2017, that she rejected Re/Max's offer. This was sufficient under the terms of the letter, which did not require Adams to respond by any specific date.

**{¶28}** Based on the foregoing, I find that Re/Max wrongfully withheld Adams's security deposit because Re/Max terminated the holdover tenancy.

**{¶29}** Accordingly, I would affirm the decision of the trial court.