[Cite as *U.S. Bank, N.A. v. Higbee Lancoms, L.P.*, 2021-Ohio-1799.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| U.S. BANK, N.A., AS TRUSTEE, AS SUCCESSOR IN INTEREST TO BANK OF AMERICA, N.A., AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF CD 2006-CD3, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, | : | APPEAL NO. C-200247 |
| | : | TRIAL NO. A-1806448 |
| | : | |
| | : | *O P I N I O N.* |
| | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| HIGBEE LANCOMS, LP, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Common Pleas Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 26, 2021

*Taft Stettinius & Hollister LLP*, *Aaron M. Herzig, Nicholas J. Pieczonka*, and *Michael L. Meyer,* for Plaintiff-Appellee,

*Ulmer & Berne LLP*, *Reuel D. Ash* and *Jesse R. Lipcius,* for Defendant-Appellant.

**Bock, Judge.**

{¶1}   Defendant-appellant Higbee Lancoms, LP, ("Higbee") appeals the trial court's judgment, which held Higbee liable to plaintiff-appellee U.S. Bank National Association ("the Bank") for past rent, common-area maintenance charges ("CAM"), taxes, carrying costs, and attorney's fees totaling $831,902. For the reasons stated herein, we affirm.

## I.   Facts and Procedure

{¶2}   Higbee operated a Dillard's retail department store at 6290 Glenway Avenue in Cincinnati ("the premises") under a lease ("the lease") which began in 1998 and expired on July 14, 2018. Under the lease, Higbee was obligated to pay $56,250 per month in rent, along with taxes, CAM, and other operating expenses. The lease required any changes in the terms to be in writing and signed by both parties.

{¶3}   After some transfers, Dillard's Realty Associates, LLC, assumed interest in the lease and the loan obligation. It defaulted and the Bank foreclosed on the property. Michael Bergman was appointed as the receiver in the foreclosure.

### A.   The Proposed Agreement

{¶4}   The parties began communicating via email in January 2018. In February 2018, Bergman emailed Chris Johnson, a corporate representative of Higbee, as follows: "Thanks for your time last week. Attached is a lease renewal proposal that demonstrates our understanding of your needs and our desire to work with you. After you have a chance to review, let's set up some time to chat at your convenience." Johnson responded that Higbee was not interested in staying on the premises if it had to pay rent.

{¶5} Johnson emailed Bergman in April 2018 stating that Higbee would stay on the premises for a term of one year for $0 rent, with Higbee paying expenses. Johnson added that he wanted to confirm these terms before sending them to Higbee's legal department to draft the agreement.

{¶6} Bergman emailed CIII (the umbrella organization over Bergman's company and special servicer of the Bank) Higbee's proposed terms. CIII responded, "Yes, let's make the proposal."

{¶7} Later in April 2018, Bergman emailed Johnson to tell him that he had sent the proposal to the appropriate parties for approval.

{¶8} Bergman emailed Johnson in early May 2018, stating in part: "Wanted to let you know that ownership is working on moving the lease proposal forward - hope to hear back from them in the coming days."

{¶9} In late May 2018, Higbee's counsel emailed Bergman with the first draft of "a lease amendment for the Dillard's store at West Town Center extending the Initial Term of the Lease for one year * * *." The parties continued sending redlined drafts.

{¶10} After the lease expired in July 2018, Bergman continued to invoice Higbee for rent under the lease.

{¶11} In an August 2018 email, Bergman informed Johnson that Higbee was a holdover tenant and requested that Higbee pay past-due rent. Johnson responded, "the deal we had was no rent for one year."

{¶12} In a September 2018 email, Bergman told Johnson that the one-year rent abatement would begin when the parties signed the lease amendment and that rent would continue to accrue until that time. Johnson told Bergman that Higbee

was relying on the terms they had discussed and back rent was not a part of those discussions. Bergman again informed Johnson that he considered Higbee to be a holdover tenant because there was no signed agreement.

{¶13} In mid-September 2018, Higbee's counsel sent a draft of the lease amendment to Bergman for signature. In October 2018, Bergman sent Higbee a demand letter requesting that it pay the past-due rent.

### B. The Lawsuit

{¶14} Bergman sued Higbee, asserting that Higbee had not paid rent since the expiration of the lease in July 2018, that it remained a holdover tenant, and that negotiations to extend the lease had failed. Bergman demanded back rent along with other relief. In June 2019, the trial court granted the Bank's unopposed "Motion to Substitute as Party Plaintiff."

{¶15} The Bank filed an amended complaint, seeking damages for past and future rent for an alleged breach of a commercial-real-property lease. Higbee's counterclaim sought to estop the Bank from pursuing rent payments because the Bank and Bergman had told Higbee that it could remain in the premises rent-free for a year after the lease expired in exchange for Higbee paying CAM, taxes, and insurance.

{¶16} The trial court granted the Bank's summary-judgment motion, awarding $831,902. The trial court did not offer a rationale for its decision.

{¶17} Higbee timely filed its notice of appeal.

### II. Standard of Review

{¶18} We conduct a de novo review of summary-judgment decisions. *Holloman v. Permanent Gen. Assur. Corp.*, 1st Dist. Hamilton No. C-180692, 2019-Ohio-5077, ¶ 8.

4

{¶19} Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Id.* at ¶ 7.

### III.   Assignment of Error

{¶20} Higbee's single assignment of error asserts that the trial court erroneously granted the Bank summary judgment, arguing that (1) the parties had an oral lease, which the Bank breached; (2) Higbee's partial performance removed the oral lease from the statute of frauds; and (3) regardless of whether a lease existed, equitable estoppel prevents the Bank from pursuing rent payments.

{¶21} For the following reasons, we find no merit in Higbee's assignment of error and affirm the trial court's judgment.

#### A.  There Was No New Oral Contract

{¶22} Higbee asserts that the parties' communications created a new oral agreement in which Higbee would remain on the premises for one year, without any rent, but paying for CAM, taxes, and insurance.

{¶23} For a contract to exist, the parties must consent to its terms, a meeting of the minds must occur, and the terms of the contract must be definite and certain. *Roth v. Natl. City Bank*, 1st Dist. Hamilton No. C-100216, 2010-Ohio-5812, ¶ 10.

{¶24} In *Vogel v. Albi*, 1st Dist. Hamilton No. C-190746, 2020-Ohio-5242, this court found that emails exchanged between the parties failed to demonstrate a meeting of the minds. *Id.* at ¶ 2. The emails showed that the parties had negotiated the sale of real property from Frank Albi and Third Street Associates, LLC,

5

(collectively, "Albi") to Joe Vogel. *Id.* ¶ 4-10. An Albi representative stated in an email that Vogel's proposal was acceptable, but the deal would not be final until the parties signed a written contract. *Id.* at ¶ 8. Vogel emailed Albi acknowledging that he had not signed the contract, but implied that the parties should rely on Vogel's verbal commitment. *Id.* at ¶ 11. Albi sold the property to another buyer. *Id.* Vogel sued for breach of contract. *Id.* at ¶ 12. This court found that the trial court properly granted judgment in Albi's favor because any acceptance of an offer by the seller was contingent upon both parties signing a written contract. *Id.* at ¶ 2.

{¶25} Like in *Vogel*, the trial court properly granted summary judgment. The parties did not anticipate a new oral agreement. Instead, their communications show that the parties anticipated amending or extending the lease. And that lease was clear that no amendment could be final until the parties had signed an amended lease. Bergman's and Higbee's emails show that their intention was to memorialize the agreement in writing. The parties discussed a proposal and exchanged drafts for an amended lease, but they did not finalize an agreement because they never signed an amended lease.

{¶26} For example, an April 2018 email from Johnson, Higbee's corporate representative, sought confirmation of the terms of the lease before it was turned over to Higbee's legal department to draft the lease. Further, an April 2018 email from Bergman to Johnson stated that the proposal was being presented for approval to the appropriate parties.

{¶27} Moreover, the first draft of a post-July 14, 2018 lease term was drafted by Higbee, with Higbee's counsel stating that she was attaching, "a *lease amendment* for the Dillard's store at West Town Center *extending the Initial Term* of the Lease for one year." (Emphasis added.)

{**¶28**} Finally, the parties' email communications about the terms of the contract began six months before the expiration of the lease and continued through September 2018—long past the July 14, 2018 expiration of the lease—with exchanges of drafts going back and forth between the parties. And Johnson testified in his deposition that it was necessary to turn the matter over to Higbee's legal department because "they draft the leases and I don't."

{**¶29**} The communications between Higbee and Bergman were dialogue between two sophisticated businesses discussing a proposed deal, not a final one. As negotiations began six months before the expiration of the lease, Higbee could have ensured that the deal was final by the lease's expiration date.

{**¶30**} The parties' communications show that they did not intend to create a new oral contract.

### B.  Higbee's Statute of Frauds Argument is Moot

{**¶31**} Higbee argues that the doctrine of partial performance removes the parties' oral agreement from the operation of the statute of frauds, which would require the parties' lease to be in writing. But because we have determined that the parties did not have an oral contract, we find this issue to be moot and decline to consider Higbee's argument.  *See State v. Smith*, 1st Dist. Hamilton No. C-190558, 2021-Ohio-1389.

### C.  Equitable Estoppel

{**¶32**}  "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes [its] position in reasonable reliance on those facts to [its] detriment." *Wright v. Mirza*, 2017-Ohio-7183, 95 N.E.3d 1108, ¶ 13 (1st Dist.), quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188 (1994).

{**¶33**} To make a prima facie case of equitable estoppel, Higbee must show (1) the Bank made a factual misrepresentation; (2) the misrepresentation was misleading; (3) the Bank's misrepresentation induced Higbee's actual reliance that was reasonable and in good faith; and (4) Higbee's reliance caused detriment. *Kunz v. Reisenfeld*, 1st Dist. Hamilton No. C-120179, 2012-Ohio-5460, ¶ 20. This court requires parties seeking equitable estoppel to demonstrate actual or constructive fraud. *Id.*

{**¶34**} Higbee's equitable-estoppel argument is not well taken because the Bank made no factual misrepresentation and there was no showing of fraud. The parties were in negotiations. Bergman was clear that any deal was contingent on approval by the appropriate parties. The parties continued sending drafts back and forth long after the lease expired. The parties' communications show that they were discussing a proposal—and nothing more. Equitable estoppel does not apply.

### D. Holdover Tenancy

{**¶35**} A tenant who remains in possession of leased property after a lease term expires is a tenant at sufferance. *Adams v. Relmax*, 2018-Ohio-1751, 111 N.E.3d 758, ¶ 10 (8th Dist.). A holdover tenant is not relieved from its obligation to pay the rent. *B. & O. RR. Co. v. West*, 57 Ohio St. 161, 49 N.E. 344 (1897).

{**¶36**} If a tenant holds over and operates according to the expired contract's terms, the law implies a contract under those same terms. *Kazmaier v. Fat Jacks, LLC*, 6th Dist. Wood Nos. WD–09–048 and WD–09–057, 2010-Ohio-3627, ¶ 18. To determine the length of the term of a holdover tenancy, courts look to the expired lease's provision for rent payment. *Id.* An expired lease that provided for annual rent creates a holdover tenancy from year to year, even if the payments were to be made in monthly increments. *Id.*

{¶37} Higbee argues that it was not a holdover tenant because the parties' negotiations were for a new oral agreement. Therefore, Higbee argues, the purported oral agreement was an entirely new agreement, not an extension of the lease. But as described above, the parties' communications show that Higbee was aware that the parties contemplated extending its existing lease via a written lease amendment.

{¶38} Therefore, as of July 15, 2018, Higbee was a holdover tenant. The terms and conditions of the lease—which required Higbee to pay "annual base rent * * * payable in equal monthly installments * * * during each and every calendar month during the Initial Term and any Renewal Term"—created a year-to-year holdover tenancy. *Id.* Despite Higbee leaving the premises in February 2019, all of its obligations under the lease lasted until July 14, 2019.

## IV.    Conclusion

{¶39} The record shows that Higbee and the Bank did not create a new oral contract or extend/amend the lease. The parties engaged in lengthy negotiations, but failed to agree to or sign a final written agreement. Therefore, the terms of the agreement were never definite and there was no meeting of the minds.

{¶40} The amount that the trial court ordered Higbee to pay is substantial. But the law and the record support the Bank's position that Higbee was a year-to-year holdover tenant. As a result, it was obligated to meet all of the terms of the lease for the remainder of the holdover term.

{¶41} The trial court did not err in granting the Bank's motion for summary judgment. Higbee's assignment of error is overruled and the trial court's judgment is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion